## HAVENS and wife *vs.* VAN DEN BURGH.

Marriage and the birth of a child are an implied revocation of a will previously made, disposing of the testator's whole estate, where there is no provision in or out of the will for such new relations.

This rule applies as well to a case where the testator had children by a former wife who are provided for in the will, as where he was without children at the time it was executed.

The presumption of a revocation may be repelled by circumstances showing that the testator intended the will to stand notwithstanding the change in his family; but the existence of an unexecuted will, found among the papers of the testator in the hands of his executor, but which was not in the testator's hand-writing, which was similar in most of its provisions with the one which had been executed, but by which the after-born child was provided for, where there was no proof of the cir-cumstances under which the unexecuted paper was prepared, and it was not shown why it was not executed, was held not to rebut the presumption of a revo-cation.

EJECTMENT for land in the county of Greene, tried before PARKER, C. Judge, at the Greene circuit, in September, 1844.

It was admitted on the trial that Rykert Van Den Burgh died seized of the premises in question, in September, 1807, leaving seven children, of whom Hannah Havens, one of the plaintiffs,

and who is the wife of the other plaintiff, was one. She was born in November, 1806, and was the only issue of R. Van Den Burgh by his second marriage, which took place in January, 1806. The other six children, two sons and four daughters, were born of a former marriage ; the defendant is one of these sons.

In July, 1805, Rykert Van Den Burgh then being a widower, made his last will and testament duly attested, whereby he devised in fee and bequeathed all his estate real and personal, except certain legacies afterwards mentioned, to his eldest son, Henry (the defendant,) charged however with the suitable maintenance of his two youngest daughters, until they should respectively marry, and with their education. He directed that the defendant, out of the estate devised to him, should maintain his other son, Peter, until the latter should request the former to convey to him an undivided half of all the estate so devised and bequeathed to him, which when so requested he was required to do, upon receiving from Peter the sum of thirty dollars, and thereafter the portion of the estate so conveyed to Peter was to be chargeable with the support of the testator's youngest daughter Maria. He then gave legacies of fifty pounds each to his two daughters, Elizabeth who was married, and Catryntie, both to be on interest from the date of his will, and the former to be paid in one year after his decease, and the latter within one year after her marriage ; but this last was not to be required to be paid sooner than one year after his decease; and legacies of seventy pounds each to each of his youngest daughters Lena and Maria, to be paid, with interest from the same time, within one year after their marriage respectively ; and upon the marriage of each of his three unmarried daughters, his executors were to furnish them with an outsetting equal to that which he had given to Elizabeth upon *her* marriage. He empowered his executors, at their discretion, to sell certain designated parcels of his real estate, to enable them, with his personal effects, to pay the aforesaid legacies. He also gave to his four daughters his negro woman, a slave, with power to his executors, in their discretion, to sell her and divide the money equally among his

said daugnters ; and he appointed A. Van Dyck and two other persons his executors.

Upon this state of facts the plaintiff, upon a former trial, claimed to recover in the right of Hannah Havens an undivided seventh part of the premises in question, upon the ground that the intermarriage of the testator and the birth of the plaintiff Hannah Havens operated as an implied revocation of his will. But the circuit judge before whom that trial was had being of a different opinion, nonsuited the plaintiff. Upon an exception taken the plaintiff moved, at the January term, 1844, to set aside the nonsuit; which, after argument, was granted—*Bronson*, J. delivering the opinion of the court as follows:

" Marriage and the birth of a child are events of great importance in a man's life, and such as usually effect a powerful influence upon the final disposition of his property. If he has previously made a will disposing of the whole estate, without any provision in or out of the instrument looking to the contingencies of afterwards having a wife and child, the happening of those events afford very strong presumptive evidence of a change of intention in relation to the disposition of his property ; and on this ground rests the doctrine of an implied revocation of the will. That there may be such a revocation, is not denied by the defendant's counsel ; but it is said that the rule only applies where the testator was a bachelor or without children at the time the will was made. There are some *dicta* in the books to that effect; but I do not find that any case has ever turned upon that distinction. *Yerby* v. *Yerby*, (3 *Call*, 334,) upon which the counsel so strongly relies, turned upon its own peculiar circumstances. The testator had declared that his first children, who were devisees in the will, should not be injured by the second marriage; and in his last illness he refused to alter the will, though he expressed the intention of making some alterations when he got well. Having thus referred to and refused to alter the will, after the change of circumstances from which a change of intention might otherwise have been inferred, the court thought it impossible to presume a revocation. Although the change of circumstances is less striking where there were children at the time the

will was made than it is where there were none, still, in the absence of any fact tending to rebut the presumption, it can hardly be doubted in either case, that the subsequent marriage and birth of a child would work a change of intention in relation to the disposition of the property. If we admit the doctrine of implied revocations at all, I do not see how we can stop short of saying that the will is gone whenever marriage and issue follow, unless there is something in the case from which it can be reasonably inferred that, notwithstanding the new relations of the testator, it was still his intention that the will should stand.

" In this case we have, 1. A will disposing of the whole estate to the six children then in being, by name; 2. The subsequent marriage and birth of a child, who is the plaintiff in this suit; 3. No provision, either by the will or in any other form, has been made for that child; if the will stands she gets nothing; and 4. There is nothing in the case tending in the slightest degree to show that a future marriage was in the mind of the testator at the time the will was made; or that he afterwards intended the will should prevail, notwithstanding his new relation to a person having an equal claim upon his affections and bounty with those to whom the property had been given. In such a case I think we must conclude that the will no longer spoke the mind of the testator in relation to the final disposition of his estate. The question was fully considered by the Chancellor, in *Brush* v. *Wilkins*, (4 *John. Ch.* 506,) and on a review of most of the cases he came to the conclusion that a subsequent marriage and birth of a child amounted to an implied revocation of the will. There is nothing in the case before us to bring it within any established exception to the general rule, and I think the plaintiff was improperly nonsuited. I have not gone more at large into the question, for the reason that since the statute providing for all future cases, the subject has in this state lost much of its interest. New trial granted."

Upon the second trial the foregoing facts were again admitted, and a motion for a nonsuit having been denied, in conformity with the preceding opinion, the defendant offered in evidence the following additional facts, which his counsel insisted were

sufficient to rebut the presumption of a revocation of the will, viz.: That Mr. Van Dyck, one of the executors, was a lawyer and transacted all the legal business of the testator and drew the will; that he and the other executors, all being now deceased, caused the will to be proved and acted under it in the settlement of the estate; that among the papers of the estate in the hands of Mr. Van Dyck as executor, there had been found a paper without date, in his hand-writing, purporting to be an unexecuted and unfinished draft of a will of Rykert Van Den Burgh, which was offered in evidence. The disposition of the testator's property contained in this paper corresponded in most respects with the executed will; all the real and personal estate being in the first place devised and bequeathed to his two sons, subject to the payment of legacies; but the plaintiff Hannah was to be maintained and educated at the expense of the defendant, until she should come of age; and all the daughters, including Hannah, were to have legacies of fifty pounds each, and she was to be furnished with an outsetting like the others at her marriage, and to share with her sisters in the proceeds of the sale of the slave. The defendant also offered to prove the payment by the executors and the devisees of the several legacies mentioned in the will of the testator, and that they had provided for the maintenance and education of Hannah and the support of her mother, and that they paid to Hannah, shortly before her intermarriage with the plaintiff Peter Havens, a sum equal to that mentioned as a legacy to her in the unexecuted instrument. He also offered to prove that the testator, when he made his will and at the time of his death, was seized of other real estate besides the premises in question, of the value of four thousand dollars in the whole. The plaintiffs' counsel objected to all the evidence so offered, and the circuit judge excluded the same; and under his direction the jury found a verdict for the plaintiffs.

The defendant again moved for a new trial on a bill of exceptions.

*K. Miller & H. Hogeboom,* for the defendant, insisted that the evidence offered should have been received. Where an im-

plied revocation is relied on, any fact having a tendency to re-but such implication is competent. By the unexecuted paper, the testator did not attempt to alter the destination of the real estate; that was to go to the sons as in the former will; and the only difference is that provision was made for the after-born daughter. This attempt to modify the former will recognizes its existence and validity, and proves that it was in the know-ledge and recollection of the testator, and he suffered it to stand as his will. (*Brady* v. *Cubit*, *Doug*. *R*. 39; 1 *Eq. Cas. Abr*. 413; *Yerby* v. *Yerby*, 3 *Call's R*. 334; *Brush* v. *Ex'rs of Brush*, 4 *John. Ch. R.* 506; *Johnson* v. *Johnson*, 1 *Phil. R*. 447.)

*R. W. Peckham*, for the plaintiffs.

Per Curiam. It was not offered to be proved that the testa-tor ever saw or heard of the unexecuted paper. It was not in his hand-writing, and it did not appear when it was prepared, or why, if prepared at his request, it was not executed. There is a failure in the offer to connect him with the paper, and we can-not indulge in conjecture concerning it. If however it had ap-peared to have been dictated by him, it would not have had the effect claimed for it by the defendant. Slight circumstances in some cases have been held sufficient to destroy the presumption of a revocation, arising out of a change in the testator's family; but the acts set up in this case, if they have any bearing, tend rather to sustain than to detract from the legal presumption. The paper in question does not profess to be an addition to, or qualification of the will already made, but if executed it would have been a complete substitute for it. The sons were indeed to have the same property, including the premises in question, but with other and increased charges upon it; and the plaintiff was to be provided for. The paper affords no countenance to the idea that the testator preferred the old will to the application of the law in cases of intestacy, in the disposition of his estate.

The other evidence offered related to the acts of other persons subsequent to the execution of the will and the death of the tes-tator, which appear to have no bearing upon the question of revo-

cation. Perhaps they might afford a ground of equitable relief to the defendant by compelling a return of what he had expended for the plaintiff; but upon the question of title they do not seem to be material. .

New trial denied.