Paschal P. Wheeler *vs.* Sarah B. B. Wheeler.

Revocation of a will by marriage, under our statute, is presumptive only, not absolute, and evidence of the acts of the· testator and circumstances showing clearly an intention.that the will shall stand, ought to be admitted.

Evidence of parol declarations is not admissible to rebut the presumption of revocation from marriage, and under our statute, the same evidence is required to·rebut the presumption of revocation of a will of personal as of real estate.

The testator, having children by a former marriage, in contemplation of a second marriage, conveyed his real estate in trust for his children, or for such uses as he should by will direct, and his intended wife released in said conveyance all claim of dower in said estate.   On the same day, the said intended wife conveyed her property in trust for her heirs, ·and the testator released all his claim, as future husband, thereto.   The day following, the testator made his will, and two days. thereafter, the parties married :   Held, that the marriage did not revoke the will.

THIS was an appeal from a decree of the Court of Probate of the town of Scituate, refusing the probate of an instrument purporting to be the last will and testament of Paschal P. Wheeler.

It appeared in evidence, that on the twelfth day of April, 1849, Paschal P. Wheeler, being then a man about eighty years of age, and the father of four grown up children by a former marriage, having contracted a marriage with the appellee, a woman about thirty-five years of age, executed a deed of trust, whereby he conveyed his real estate in trust to such uses as he should by will appoint, or, in default of such appointment, to be divided among his heirs in the same manner as the same would be divided by law. This was signed by the appellee and contained a clause in which the appellee acknowleges notice of the conveyance and agrees not to claim any right of dower in the premises, in case she should survive her intended husband. On the same day, Sarah B. B. Hawkins, the appellee, executed a deed of trust, in which she conveys her property in trust, for her heirs at law, or to such purposes as she should by will appoint. This deed is signed by Paschal P. Wheeler, and he acknowledges notice of the conveyance, and agrees that he will claim nothing in her real and personal estate by virtue of his marriage, and will do all that is necessary on his part, to effectuate the trusts. The person who drew these instruments testified, that the parties intended that neither should have any claim to the property of the other, and wished the deeds drawn to effect this purpose, the evidence of their declarations being admitted *de bene esse.* The day following, Paschal P. Wheeler executed his will, by which he bequeathed all his property, both real and personal, to the children of a former marriage. The marriage took place two days after this. The testator died, January 29th, 1850, leaving the appellee as his widow.

The appellants further introduced a release, signed by the appellee, on the 2d of February, 1850, whereby, in consideration of the allowance to her of certain articles of furniture and provisions, and of a note for seventy-five dollars, given by the executor of the testator, she releases to the heirs all her right, title and interest in the estate of her deceased husband. The Court admitted *de bene esse*, for the purpose of showing her understanding of the arrangement made previous to her marriage, proof that she had declared, near the time of the death of her husband, and afterwards, that she expected nothing by the will, on account of the contract with her husband.

The case was argued by AMES and BRADLEY, for the appellants, and by CARPENTER, for the appellee.

BRADLEY and AMES, for the appellants, contended :

1st. By the law of Rhode-Island, marriage is not absolutely and conclusively a revocation of a prior will : but only one of the modes in which it is capable of being revoked, and *prima facie* a revocation. The statute provides, " no devise or bequest in writing, of any lands, tenements or hereditaments, or any clause thereof, shall be *revocable* otherwise than by a marriage of the testator subsequent to the date thereof," &c. (Dig. of 1844, p. 231, sec. 3.) The word is " *revocable*," not " revoked," as in the statute of Victoria. (2 Jarman on Wills, p. 114,) and differs from it as voidable differs from void. It affords a *prima facie* presumption of revocation, subject to rebuttal, by circumstances evidencing a contrary intent. Our statute puts marriage on a footing with marriage and the birth of a child at common law, making it a presumption of revocation. *Lancashire vs. Lanca-*

*shire,* (5 Term, 61.) *Brush vs. Wilkins,* (4 Johns. Ch. R. 509.) But circumstances showing that this revocation was not intended, or provisions in the will itself, or in any other instrument, for the wife and child, could be proved to rebut this presumption. *Havens vs. Vandenburgh,* (1 Denio, 29.) The will of the testator, either expressed or implied, must govern in all cases. The act must be accompanied with a revoking intent to operate a revocation.

As the statute was enacted with reference to the previous law, we must be guided by the light of the previous law in its construction. By the common law, there were a great many implied revocations, (Swinburne on Wills, part 2, p. 173.) The statute declares rather what shall not, than what shall revoke a will. The idea is, there are a great many common law implications of revocation, all of which shall be excluded, except those expressly mentioned. These were to remain precisely after the statute as they were before. No new power was given to them. Thus, by burning, obliteration, and cancellation, a will is not revoked, except such be the intention. The contents of a will unintentionally destroyed, may be established by evidence.

The omission of the word " marriage," in the second clause, favors the same construction. In the statute of Charles II. it was omitted entirely ; and, when our statute introduced it, it merely said, wills shall be " revocable" —that is, capable of being revoked by it, leaving the analogies of the common law to determine when.

And this view is strengthened by the evident policy of the statute, which, in its care to effectuate the intention of the testator, has even changed the rules of the common law. Thus, it annuls the rule in Shelley's case,

extends the effect of the will to after-acquired estates, and gives to the child born after the execution of the will, the same interest which he would have had if his father had died intestate.

2d. Revocation of a prior will by marriage, proceeds upon the presumed intention of the testator, that it should be revoked upon his forming the new relation imposed by marriage, or, upon the tacit condition annexed to the will, that at the time he makes it, he intends it should be revoked by marriage, and this presumed intention or condition, may be rebutted by circumstances clearly showing the contrary. Consequently, any fact well proved, which fairly indicates that the testator intended his will should stand, will rebut the presumption of re-vocation from marriage. The presumption is rebutted by a settlement, or by a devise to the future wife. Any thing from which it may be reasonably inferred that the will was intended to stand, will suffice for this purpose. (1 Denio, p. 29.)

3d. The intention is clearly proved in this case that the will should stand. The counsel contended, that this was proved by documentary evidence, clearly admissible, viz., the conveyances in trust of the testator and the appellee, and also by the release signed by her after the testator's death ; which might be regarded either as a recognition of the continuance of the arrangement made previous to the marriage, or as an estoppel to prevent her making an objection to the will. That it was further proved by parol testimony, which was likewise admissible to show the revocation of a will of personal estate, and this was as far as it was necessary to go in this case, since the question only affected the personal property, though there were authorities which show that the rule

may be extended to real estate. *Brush vs. Wilkins,* (4 Johns. Ch. R. 510.)

CARPENTER for the appellee contended. The right of making wills is *stricti juris,* given by the supreme power of the State, and not a natural right ; and this should be kept in mind in construing this statute.

The law in regard to the revocation of wills has been varied from time to time, and has been constantly growing more strict, giving less and less weight to implications as to the testator's intention. For instance, a bequest *ad pios usos* would not now be revoked by the testator's recovery. And the construction has become more stringent since the statute of frauds.

The circumstances attending the marriage and the relative ages of the parties, are against the presumption that the testator did not intend the statute to operate.

The articles of agreement entered into previous to the marriage, have been called a marriage settlement, but it is not such a settlement as would be in lieu of dower— it confers no benefit upon the wife, it is not a jointure. She stipulates to claim no right of dower in his real estate. Nothing is said about his personal estate. The deed contemplates the possibility of his dying intestate, and in such a case she would be entitled to her distributive share in his personal property. He can devise to her a portion of his real estate, and she doubtless relied upon his generosity, influenced by her fidelity and affection, for some testamentary provision. The instruments imply that he might, by his will, give her just what he pleased, not that he intended to give her nothing.

But suppose he did intend to cut her off, is it sure that he did not change his intention ? Suppose, after he had experienced the benefit of the marital relations, he had

been called upon to make his will, would he have made such a will ? And the Court must conclude not that the will was provisional, but that it was absolute ; and that the testator did not change his mind afterwards. He should have shown the intention to exclude her from his property after their marriage, if such is the implication from these instruments ; but after marriage we hear nothing but expressions of affection and esteem.

Her release cannot operate as an estoppel because there are circumstances about the instrument which would make it void ; neither does it show that she understood that she was to take nothing in her husband's estate, because, if that was her understanding, why should they seek to obtain her release.

. In the section of our statute, relating to revocations, the legislature has followed the language of the English statute, adding marriage as an additional cause of revocation. But in the repetition in the latter part, this is omitted. But suppose the latter clause had been entirely omitted, would it have had any different effect. In copying the English statute, the legislature have forgotten to make in the second clause, the amendment which they made in the first. If the statute had intended to distinguish marriage from the other causes of revocation in this particular, it would have stated the distinctions more explicitly.

The law relating to the revocations implied by marriage and the birth of a child would have more bearing upon this case, were it not that the will is here revoked by a statutory provision, and we cannot put the provisions of a statute on a level with the implications of common law. (Cruise, vol. 4, p. 100.)

GREENE, C. J.   Paschal P. Wheeler, the testator, made his will on the 13th of April, 1849 ; on the 15th of the same month, in the same year, he married Sarah B. B. Hawkins, and, in the course of the same year died, leaving the said Sarah, his widow.   She objects to the probate of the will upon the ground that it was revoked by the marriage under the third section of the statute. (Dig. of 1844, p. 231.)

The counsel for the widow contend, that the revocation by marriage is absolute under the statute.

The counsel for the appellants contend, it is only *prima facie* and may be rebutted by circumstances which show a counter intent.

At common law, marriage and the birth of a child worked an implied revocation, and this upon the ground of a presumed alteration in the intent of the testator from the new relation of marriage and the birth of a child, or, of a tacit condition annexed to the will, that marriage and birth of a child should revoke it.   Marriage alone, was insufficient to make such revocation.   *Doe on the demise of Lancashire vs. Lancashire, et al.*   (5 Term R. p. 49.)   In this case, Lord Kenyon went upon the ground of a tacit condition annexed to the will.   *Havens and wife vs. Vandenburgh,* (1 Denio, p. 29.)   *Brush vs. Wilkins,* (4 Johns. Ch. Rep. 506.)   *Christopher vs. Christopher,* (2 Dickins, 445.   4 Burr, 21, 82.)   *Brady vs. Cubitt,* (1 Doug. 31.)   *Wilcox vs. Roots,* (1 Washington, 140.)

But this implied revocation might be rebutted by circumstances showing a counter intent.   *Wilcox vs. Roots,* (1 Wash. 240.)   *Brush vs. Wilkins,* (4 Johns. Ch. 506.) *Ex parte the Earl of Ilchester,* (7 Vesey, 348.)   *Havens*

*and wife vs. Vandenburgh,* (1 Denio, 27.) *Brady vs. Cubitt,* (1 Doug. 31.) *French vs. Scriptor,* (2 East 530.)

The doctrine that a revocation from marriage and the birth of a child is presumptive only, was overruled in the Exchequer Chamber in the case of *Marston vs. Roe,* (8 Ad. & El. 14.) The Court held such revocation was the result of a rule of law, and wholly independent of the intent of the testator, and, therefore, no evidence was admissible to show a counter intent. But the Court limit the application of the rule to a case, where the testator, at the time of making the will, had no children by a former marriage. It does not apply, therefore, to the case under consideration, for here the testator had children by a former marriage, to whom by his will his estate is given.

But we prefer the rule of the earlier English cases, confirmed by the decisions of the Courts of our own country.

We agree, that evidence of the parol declarations of the testator are inadmissible to rebut the presumption of revocation ; but facts clearly showing a counter intent may be proved. The revocation is implied from facts,— marriage and the birth of children—and may be rebutted by evidence of facts, which clearly rebut the presumption. The evidence of rebuttal no more trenches upon the statute of frauds, than the evidence of revocation. In both cases the evidence is by parol, but offered not to prove declarations, but facts.

We have adverted to the common law doctrine of revocation from marriage, and the birth of children, in order to show the state of the law when the statute was passed. The language of the statute is, "no devise, &c., shall be revocable otherwise than by marriage

Paschal P. Wheeler *vs.* Sarah B. B. Wheeler.

of the testator, subsequent to the date thereof, or by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, &c."

We think the true meaning of this clause is, that the acts and instruments therein specified, shall be competent to revoke a will, not that they shall absolutely have that effect.   That will depend on the circumstances.

In *Campbell vs. French,* (3 Vesey 321,) the testator by his will gave legacies to A. and B.   He revoked these legacies, giving as a reason, that the legatees were dead. It turned out they were living.   Held the legacies were not revoked.

A cancelling is another mode of revocation recognized by the statute.   If this be done under a mistake, or induced by fraud, it will be no revocation.   The revocation in these modes is not absolute, but depends on the circumstances of each case.

So with regard to a revocation by marriage, we think it was intended by the statute to be subject to the effect of circumstances, showing a counter intent in the testator.   It can hardly be supposed the General Assembly intended to give to marriage alone a greater effect than marriage and the birth of children had at common law.

Suppose the testator declares in his will that he makes it in contemplation of marriage, and intends it to stand, notwithstanding his marriage ; or, suppose there are acts of the testator, which show such intent as clearly as if expressed in his will, ought such a will, under such circumstances, to be revoked ?   We think not.

Our conclusion is, that a revocation by marriage under our statute is presumptive only, not absolute ; and that evidence of the acts of the testator, and circumstances

showing clearly an intent that the will should stand, ought to be admitted.

The last clause in the section, declares that all devises of lands shall remain in full force until the same be burned, &c., or unless the same be altered, &c. This seems to exclude all revocations, except in the mode therein provided, and therein to be inconsistent with the first clause.

Taking the whole section together, we think the construction we have given to be the true one.

It then remains to inquire, whether the facts and circumstances in proof, show an intent in the testator that his will should stand.

The counsel for the devisees offered evidence of the private declarations of the testator, to the effect, that he intended his will should stand, notwithstanding his marriage, and that this was fully intended and agreed upon between the testator and his intended wife. This evidence was admitted by consent *de bene esse*, subject to the opinion of the court as to its competency.

We are of opinion it is incompetent for the purpose for which it was offered. The presumption created by marriage can only be rebutted by evidence of a similar character, that is, of acts and circumstances, not parol declarations. These last are incompetent evidence to prove a revocation, or to rebut one. They could not be admitted for either purpose, without trenching upon the statute of frauds.*

---

* See Lord Kenyon's observations in *Doe d. Lancashire vs. Lancashire*, (5 T. R. 49,) and of the Lord Chancellor in *Kennebel vs. Scrafton*, (5 Vesey Jun. 664.) On the contrary of this see the opinion of Eyre, C. J. in *Goodtitle vs. Otway*, (2 Henry Bl. 522.) *Lugg vs. Lugg*, (Lord Raymond 441,) and *Brady vs. Cubitt*, (Doug. 31.)

The counsel for the devisees contended further, that these declarations were admissible as to a will of personal estate, and the widow being interested in the personal only, the rule as to personal applies. But the fourth section of the statute, (Digest 1844, p. 232,) provides that wills of personal estate shall not be valid unless executed in the manner prescribed for wills of real estate, and shall not be revoked except in the manner prescribed for the revocation of wills of real estate.

Excluding from the case, therefore, the parol declarations of the testator, we will consider such facts and circumstances in proof as we deem competent.

*First.* The testator at the time he made his will, had children by a former marriage, to whom he gave his estate by his will.

*Second.* The deed of trust executed by the testator, and the deed of trust executed by the intended wife, both recite that a marriage was about to be had between the parties. He conveys all his real estate, and she releases all right of dower which she might have thereto. She conveys her real and personal estate, and he releases all claims which he might have thereto by virtue of the marriage.

There was no motive for the execution of these deeds, except the intended marriage.

This was on the 13th of April. The trustee of the testator's estate was to convey it to such purposes as he should by his last will appoint. On the same day the testator executed the present will, and destroyed an old one, the same in part. There was no motive for such destruction, except to make a will which should not be revoked by his contemplated marriage.

On the 15th of April, 1849, the marriage took place.

These acts of the testator show clearly to our minds, that he intended his will should stand, notwithstanding his marriage. It is obvious that the deed of trust and the will were both executed in contemplation of marriage. To allow the marriage under such circumstances to revoke the will, would be to defeat the manifest intent of the testator to give his estate to his children, exclusive of any claim on the part of his wife.

A decree therefore should be entered approving the will.