---

### In re DEL GENOVESE'S WILL.

(Supreme Court, Appellate Division, Second Department. July 30, 1915.)

WILLS ⬤⟿191—IMPLIED REVOCATION—MARRIAGE AND BIRTH OF ISSUE—SUB-
SEQUENT ACQUISITION OF PROPERTY.

Decedent Estate Law (Consol. Laws, c. 13) § 35, providing that if, after the making of any will disposing of the whole estate, the testator shall marry and have issue, and the wife or issue of such marriage shall be living at the testator's death, the instrument will be deemed revoked, unless provision shall have been made for such issue by some settlement, or unless such issue shall be provided for in the will, or mentioned therein so as to show an intention to make such provision, and that no other evidence to rebut the presumption of revocation shall be received, was not rendered inapplicable by the fact that subsequently to the execution of his will, purporting to dispose of his whole estate, the testator acquired other property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 469–478; Dec. Dig. ⬤⟿191.]

Appeal from Order of Surrogate, Kings County.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The motions of Joseph Del Genovese for leave to renew an application to open a decision and decree refusing probate of the will of Virgilio Del Genovese having been denied, said movant appeals. Order affirmed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

William H. Hamilton, of New York City (Norman C. Conklin, of New York City, on the brief), for appellant.

Walter Carroll Low, of New York City, for respondent Fidalma Del Genovese.

Outerbridge Horsey, of New York City, for respondent Francesca Del Genovese.

PUTNAM, J.  Virgilio Del Genovese in 1886 made a will, which · purported to bequeath $10,000 to his brother Joseph, the present appellant.  He married thereafter, and this marriage legitimized his daughter Francesca.  In January, 1907, he died resident of Kings county.  By reason of the statutory revocation by the marriage and birth of issue, the will has been denied probate.  The original contest turned on the marriage, as Mrs. Genovese's prior marriage raised a question whether this earlier status had been legally dissolved.  Matter of Del Genovese, 56 Misc. Rep. 418, 107 N. Y. Supp. 1033.  A decree was made on December 19, 1907, refusing probate of the will, which was unanimously affirmed here.  136 App. Div. 894, 120 N. Y. Supp. 1121.

Pending this appeal, and in April, 1908, appellant had made an application to open this decree, so as to grant a new trial and a rehearing of the issues, and "an opportunity to offer testimony and proofs as to the value, amount, and extent of the real and personal estate of which the said Virgilio Del Genovese, now deceased, died seized and possessed, and to establish the extent thereof in excess of $10,000," to show that only a portion of said estate of said decedent was disposed of, and said alleged will was not revoked.  This application was denied by the surrogate, after hearing, and no appeal was taken therefrom.

Thereafter matters rested until January, 1915, when the appellant again renewed this earlier application to reopen the decree and go into the value of the estate, and to show probable assets or claims approximating $80,000 against the government of Venezuela.  The petition stated that another brother, Alfredo, had formerly represented to appellant that the estate was insolvent, but that thereafter the government of Venezuela, through the United States, had actually paid over to the administratrix the sum of $70,000.  Other averments of the property of the estate were set forth.  After a hearing this application was denied by order of the surrogate dated March 31, 1915, from which the petitioner has taken this appeal.

The extraordinary laches of appellant were perhaps grounds to deny the leave to renew his motion made and denied in 1908, but we are clear that the denial was correct on the merits.  Although the antenuptial will had no residuary clause, and did not say that the $10,000 legacy exhausted the testator's estate at the time of execution, it is

not controverted that he will, when made, disposed of quite the whole estate as it then existed. It is argued, however, that, as wills are ambulatory, the state of things determining this question is to be taken as at decedent's death. But this does not apply to the revocation implied by law from marriage and the birth of a child.

Decedent Estate Law, section 35 (Laws of 1909, ch. 18 [Consol. Laws, c. 13]) provides:

"Revocation by Marriage and Birth of Issue. If after the making of any will, disposing of the whole estate of the testator, such testator shall marry, and have issue of such marriage, born either in his lifetime or after his death, and the wife or the issue of such marriage shall be living at the death of the testator, such will shall be deemed revoked, unless provision shall have been made for such issue by some settlement, or unless such issue shall be provided for in the will, or in such way mentioned therein, as to show an intention not to make such provision; *and no other evidence to rebut the presumption of such revocation* shall be received."

The steps in accepting this doctrine of implied revocation by marriage and birth of children, borrowed from the civil law, are set forth in Brush v. Wilkins, 4 Johns. Ch. 506, 519, as far as the law stood in 1820. Kent, Chancellor, there showed that the common-law courts had at first been reluctant to follow this inference of intention. The presumption of revocation by such family changes, however, might be then rebutted by parol evidence. This, however, he regarded as dangerous, saying:

"Courts would be running the hazard of substituting their will for that of the testator."

In this state of the law, the revisers in 1828 put in the clause excluding all evidence to rebut the presumption of revocation except—(a) unless a provision be made for such issue by some settlement; or (b) unless the issue are provided for in the will; or (c) in such way mentioned as to show an intention not to make such provision. 2 Rev. Stat. p. 64, § 43. In their original note, the revisers explained:

"Marriage and the birth of issue have long been held in England to operate as a presumptive revocation of a will previously made; but there has been much litigation, and there is still much uncertainty, in regard to some of the qualifications of the rule. In 4 Johns. Ch. 506, Chancellor Kent applied the rule to a case before him, and discussed some of the doubtful points above alluded to. The importance of the principle itself, and the doubts that are connected with it, have induced the revisers to prepare the above section, in which they have endeavored to state the rule as now recognized by the courts, and to incorporate in it all the circumstances which, in their judgment, ought to be admitted, to repel so just and reasonable a presumption. Whether parol evidence is admissible to rebut the presumption, is doubted by Chancellor Kent in the case referred to; but its admissibility seems to be established by recent decisions in England. Such evidence, in cases of this sort, must always be dangerous, and is therefore excluded by the revisers." 3 Rev. Stat. (2d Ed., 1836) Appendix, p. 631.

It is the change by marriage and parenthood that the law presumes were not in the mind of the maker of the antenuptial testament. If this question were to remain in suspense, so that the will might still be revived by a later windfall augmenting the estate, then there would be no certainty in the rule of testacy. Under our statute, marriage and parenthood do not raise a presumption of an intention to revoke, but

are in themselves a revocation, unless express provision be made in view of the new duties arising from the changed relation.

After much deliberation, it has been settled that the rules applicable have reference to the existing state of facts at the time the will itself was made. Israell v. Rodon, 2 Moore, P. C. 51. It follows that subsequent acquisition of property, and an augmenting of the estate after the execution of such antenuptial will, cannot prevent this revocation, which rests on the situation when the will was executed. Marston v. Roe, dem. Fox, 8 Ad. & Ellis, 14. Mere accumulation of property in addition to that possessed at the date of the antenuptial will cannot, upon any ground of reason, be considered as a "provision" made by the testator for the new dependents upon him as a husband and father. Baldwin v. Spriggs, 65 Md. 373, 5 Atl. 295.

Even before the New York statute took effect, an increase of the testator's property did not prevent this implied revocation. In a case of marriage and birth of children, and death in 1807, Bronson, J., held the will had been revoked by implication of law, and ordered a new trial. On such new trial, proof, inter alia, was offered that the testator was seized of other real estate besides the premises in question, of the value of $4,000 in the whole, but this, with other evidence, was excluded and such exclusion was affirmed. Havens v. Van Den Burgh, 1 Denio, 27, 31, 32. Revocation in such circumstances works no hardship. It brings about a descent and distribution under the just and politic rules prescribed for intestacy and aimed for the care and protection of children.

Under the prohibition of our statute, therefore, proof of increased property after the making of the will cannot avail to repeal the statutory rule to revoke a disposing testament not being made in view of marriage and parenthood, with no provision in the will, or out of it, looking to such duties. The surrogate, therefore, rightly denied the appellant's motion.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.