In the Matter of the Judicial Settlement of the Account of Proceedings of WARWICK EMILE MONTGOMERY, as Trustee under the Will of ROMANZO W. MONTGOMERY, Deceased, of the Trust Thereby Created for the Benefit of LEITA MONTGOMERY WHITE (Formerly LEITA MONTGOMERY KENT), and the Application of the Said WARWICK EMILE MONTGOMERY for Leave to Resign as Trustee of Said Trust, and for the Acceptance of His Resignation as Such Trustee and the Appointment in His Place of a Trustee or Successor or Substituted Trustee of the Said Trust under Said Will of ROMANZO W. MONTGOMERY, Deceased.

CLEMENT H. GIBSON, an Infant, by FANNIE B. HARLAN, His Testamentary Guardian, Appellant; WARWICK EMILE MONTGOMERY, as Trustee, Respondent.

Second Department, May 11, 1917.

Will — construction — word "children" does not usually include grandchild — burden of proof — will construed.

The term "children" used in a will does not include grandchildren or more remote descendants unless there is something in the will to show that the word was used in a broader sense, and one claiming that the term includes a grandchild, or issue, must establish from the will that justice, or reason, or the structure of the devisee warrants it.

A will creating separate trusts for the testator's daughters, income to the use of each for life, in substance provided that upon the death of any daughter the trust for her benefit should end, and the corpus be distributed between her issue living at the time of her decease as she might

direct by will, or if she failed to make such testamentary direction, then to be divided among the issue "*per stirpes* and not *per capita.*" If any daughter died without issue her surviving, it was provided that her share shall be distributed among her surviving brothers and sisters and the child or children of deceased brothers or sisters "*per stirpes* and not *per capita.*"

*Held,* that neither justice, nor reason, nor the structure of the devise, nor the language of the testator justified a construction by which the term "child" could be held to include a great grandchild.

APPEAL by Clement H. Gibson, an infant, by Fannie B. Harlan, as testamentary guardian of his person and estate, from an order of the Surrogate's Court of the county of Westchester, entered in the office of said Surrogate's Court on the 23d day of December, 1916, dismissing appellant's objections to the accounts herein.

*Howard R. Bayne,* for the appellant.

*Joseph H. Choate, Jr.* [*R. T. Strahan* with him on the brief], for the respondent.

JENKS, P. J.:

The sole question is whether a grandchild is within the purview of the term "child" as used in the 20th clause of this will. "Nothing is better settled in the law of wills than that the term 'children' does not include grandchildren or more remote descendants, unless there is something in the will to how that the word was used in a broader sense." (*Matter of King,* 217 N. Y. 358, 361, quoting from *Pimel* v. *Betjemann,* 183 id. 194, 200; *Matter of Pulis,* 220 id. 204; *Adams* v. *Law,* 58 U. S. [17 How.] 421.) Before the appellant can invoke the rule that the term "child" may include grandchild or issue, however remote, he must establish from the will that justice or reason or the structure of the devise warrants it. (*Pimel* v. *Betjemann, supra; Matter of Paton,* 111 N. Y. 485.)

The testator, who was the great-grandfather of the appellant, divided his residuary estate into five equal parts (changed to six because of the subsequent birth of a child). He gave to each of his two sons one part outright. He gave to his trustees one part, to be held in trust for each of his four daughters. One of such parts was to be held in trust during the lifetime of

his daughter Leita Montgomery (now Mrs. White), the present beneficiary, to collect and to receive the rents, issues and income thereof and to apply them to her use during her life. By the 20th clause the testator provided that, upon the decease of any daughter, the trust for her benefit should end and terminate, and that the trust estate "shall thereupon be conveyed, divided and distributed to, between and among her issue living at the time of her decease in such proportions and at such time or times as she shall by any instrument in the nature of a last will and testament direct and appoint and in case she shall fail to make any such direction and appointment, or so far as any such, if made, shall not extend or be effectual then to such issue in equal proportions share and share alike *per stirpes* and not *per capita*. But if either of my said daughters should die without leaving any issue her surviving then and in that case the proportion of my estate so as aforesaid devised for the use and benefit of such daughter of mine so dying without issue, shall upon her decease be conveyed, divided and distributed to, between and among her surviving brothers and sisters (excepting my son George) and the child or children of every brother or sister of hers (excepting my son George) who shall have died before her in equal proportions share and share alike, *per stirpes* and not *per capita*, to be thenceforth had and held by them absolutely and unconditionally."

Neither justice nor reason, nor the structure of the devise, nor the language of the testator used in the will in context or association, for we may resort thereto (*Matter of Paton, supra*, 485), make for the contention of the appellant. He cannot support it by plea that the testament is the work of him "who did not apprehend the precise effect of the language he made use of," who, in the absence of precise ideas or of accurate language, took "refuge in technicality and redundancy," or the work of one illiterate or ignorant, whose expressions were not lucid but confused and inartificial. (*Prowitt* v. *Rodman*, 37 N. Y. 42; *Mount* v. *Harris*, 172 App. Div. 256; *Lytle* v. *Beveridge*, 58 N. Y. 605.) The will manifests the work of a scrivener learned in the law of wills, who evidently appreciated

Second Department, May, 1917. [Vol. 177.

the great importance of apt and accurate expressions. We do not know, we cannot conjecture that either of the eminent lawyers, Charles F. Southmayd and J. Evarts Tracy, who witnessed the will, prepared it, but either might have done so without impairment of his reputation.

The testator left four daughters and two sons. The intestacy must be considered as of the death of the intestate. (*Matter of King, supra.*) The will as written, with the literal meaning applied to the expression "child" used in the said 20th clause of the will, disposed of all of the estate. It is instructive to note the exact use of the term "issue" in four instances in this very 20th clause, that would have been the precise term to use again if the testator had intended to include his great-grandchildren in the provision "and the child or children of every brother or sister of hers * * * who shall have died before her," etc. The question at once arises, why should the testator have rejected a precise term, to select one of ambiguity and one that required construction? The expression already used as to the beneficiary herself, "then to such issue in equal proportions share and share alike *per stirpes* and not *per capita,*" would have expressed the intent beyond all cavil. Whenever the term "child or children" is used in this will, context and association indicate plainly that the term refers to the literal meaning of the word. As pointed out by the learned and able counsel for the petitioner, instances can be found in the 8th, 9th, 11th, 12th, 13th and 14th paragraphs, and such instances again suggest the query why the testator should have used this word in this instance in its flexible sense when there was known and available a term to express such sense beyond question?

The learned and able counsel for the appellant lays much stress upon the expression "*per stirpes* and not *per capita,*" in that it is "entirely inappropriate and inapplicable to the children of Mary Montgomery Gibson" (the grandmother of the said infant appellant). And he comments, "It can apply only to the grandchildren or other remoter descendants of said Mary." But the class made by the testator is not limited to the children of the deceased sister of the beneficiary, but it includes the beneficiary's surviving sisters and brothers. A

*per capita* distribution naturally makes the extent of a provision uncertain and beyond the forecast of a testator. But for the presence of this phrase, the distribution would have been *per capita*, and hence the issue of deceased sons and daughters, were they never so many, would have shared equally with the surviving daughters and sons of the testator. (*Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125.) Such scheme might well work detriment to those who were regarded by the testator as the objects of his bounty.

There is indication that the testator intended principally to benefit his surviving children in the event of the death of any of his children who were life beneficiaries, in the provision as to afterborn children in the 21st clause of the will, whereby he provided that those shares shall be subject to "like limitations over to her or their issue or surviving brothers and sisters as are hereinbefore set forth."

I am the more confirmed in the conclusion hitherto expressed, by the learning of *Matter of Tamargo* (220 N. Y. 225) and *Matter of Pulis* (Id. 196), decided after this case was argued in this court.

The order of the Surrogate's Court of Westchester county is affirmed, with ten dollars costs and disbursements.

THOMAS, STAPLETON, RICH and BLACKMAR, JJ., concurred.

Order of the Surrogate's Court of Westchester county affirmed, with ten dollars costs and disbursements.