Slater, S.
The decedent, prior to 1877, married one Sophia Riegelman and had by her one son, William, still living and sole legatee and devisee in the paper writing now offered for probate. His wife having died, he thereafter, on August 24,1877, executed a last will and testament, now offered for probate. The decedent thereafter, in 1878, married one Josephine Dexheimer, and by her had one son, Emil Schuster, born in 1879. This son grew to manhood, and married. He died in 1911, leaving a widow, Emilie Schuster, and a daughter, Dorothea, his only child, bom in 1906. William Schuster, the decedent herein, died February 13, 1920. Provision had not been made for the infant by settlement, nor did the will make provision, nor show an intention not to make provision. These facts come within section 35 of the Decedent Estate Law (Consol. Laws of 1909, chap. 13) relating to revocation of wills by marriage and birth of issue, as amended by chapter 293 of the Laws of 1919, in effect September 1, 1919. The recent amendment materially changed and liberalized former section 35. The law of the state affecting the subject is now in these words:
“ § 35. Revocation by marriage. If after making any will, such testator marries, and the husband or wife, or cmy issue of such marriage, survives the testator, such will shall be deemed revoked as to them, unless provision shall have been made for them by some settlement, or they shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and such surviving husband or wife, and the issue of such marriage, shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as they would have been, if such will had not been made. No evidence to rebut such presumption of revocation shall be received, except as herein provided.”
*536 The question to be determined in the instant case is, do the words “ any issue of such marriage ” include the granchild, Dorothea Schuster? Does the word “issue ” mean children, or does it signify descendants? My attention has not been called to, nor do I find a case, wherein the word “ issue ” as used in the law of the state, with reference to revocation of wills by marriage and birth of issue, has been construed.
The right given to make a will is statutory. Decedent Estate Law, § 10. Property and its disposition is not a natural right, but the creature of civil society and subject in all respects to the disposition and control of civil institutions. The ownership and control of property is the offspring of the social state, not the incident of the state of nature.
The early history of implied revocation of wills by birth of issue is set forth by Chancellor Kent in Brush v. Wilkins, 4 Johns. Ch. (1820) 509. Later it was written into the Revised Statutes of 1830, part 2, chapter 6, title 1, article 3, section 43. This principle of the law was kept in the present Decedent Estate Law, section 35, and continued until September 1, 1919, when the section was entirely revamped, and rewritten. Formerly the law provided that, if after the making of a will disposing of the whole estate, the testator shall marry and have issue of such marriage, born either in his lifetime or after his deathf and the wife, or issue of such marriage shall be living at the death of the testator, such will shall be deemed revoked, unless provision shall have been made for such issue. Matter of Andrest, 96 Misc. Rep. 389; Matter of Del Genovese, 169 App. Div. 140. The foundation of the principle of this implied revocation was a tacit condition annexed to the will, that the party does not then intend that it should take effect, if there should be a total change in the situation of his family.
The doctrine of implied revocation is supported by *537 broad public policy and the soundest principles of justice and equity. It was based upon the presumed alteration of intention arising from new moral duties, the birth of offspring. For many years a woman’s will was revoked by marriage alone, but section 36 of the Decedent Estate Law was repealed in 1919, when the present section 35 was enacted. Men and women are now on a parity in that respect. Revocation works no hardship; it brings about a descent and distribution under the just and politic rules prescribed for intestacy and aims for the care and protection of descendants.
Statutes of this character are to be liberally construed (Hudler v. Golden, 36 N. Y. 446), and a reasonable construction should be adopted where there is no doubt as to the intent of the lawmakers. Miller v. Maujer, 82 App. Div. 419, 421.
The present section 35, in effect since September 1, 1919, and of course in force at the time of decedent’s death, no longer revokes the whole will, but allows the husband or wife, and “ any issue of such marriage ” to take the same share as they would have taken under the laws of intestacy if such will had not been made. The law now only creates a partial intestacy, instead of making void the entire will. The issue need no longer be living at the death of the testator. It harmonizes with section 26 of the Decedent Estate Law relating to a child born after the making of a will and with the statute of distribution of intestate’s estate. The Decedent Estate Law in its various sections speaks of “ child,” section 17 and section 26; “ child or other descendant,” section 29; “ issue ” is used in section 35 and in section 98, subdivision 15. The lawmakers, throughout the statute, have used these words with care and discrimination.
We are now called upon to ascertain the intent of *538 this new legislative enactment. The legislature made radical changes all in the direction of greater liberality toward wife and issue. The adjective “ any ” was one of the important added words. The word “ any ” means “ all or every.” The section is entirely without limitation of any kind or character. The word ‘ ‘ any ’ ’ was inserted either to broaden and extend the meaning of the word “ issue,” or to refer to issue of either husband or wife. In any event it was used in its enlarged and plural sense. There is no force to the use of the words “ such marriage.” There could be no lawful issue without marriage. “ Such marriage ” means the subsequent marriage causing the revocation. The word ‘' marriage ’ ’ is not intended as a limitation. And, too, if the word “ issue ” is accorded the broad meaning as this opinion holds, the word “ marriage ” has no special signification.
Without words of qualification the term ‘' issue ’ ’ is used as a word of donation and not of limitation. The word “ issue ” means posterity, progeny, breed, stock, descent, heir, heritage, lineage. This word is not circumscribed in any manner in the statute, but its meaning is natural and extensive.
The revisers of section 35 made a very significant and far-reaching change by adding these words, ‘ ‘ and such surviving husband or wife, and the issue of such marriage, shall be entitled to the same rights in, and to the same share or portion of the estate of said testator, as they would have been, if such will had not been made.”
This language suggests a division per stirpes and implies descendants. If the decedent had left no will, the grandchild in the instant case would take one-half of the estate. Can it well be said that new section 35 means anything different, provided the will was made prior to marriage and birth of issue and brought within *539 the power of the law’s revocation? It is my opinion .that “ any issue of such marriage ” as used in section 35 of the Decedent Estate Law means the first living descendant in the line of the blood of the testator. The decedent burdened society with his immediate offspring. The law of implied revocation steps in and makes provision for such offspring, because the testator failed to understand and fulfill his new duties. Such offspring of his blood was by nature equipped to and did further propagate the breed and further burdened society. The decedent’s son died and left an immediate offspring. The principle underlying the doctrine of implied revocation is just as controlling and is just as equitable when applied to a grandchild, whose fathér' had died, as when applied to the immediate offspring of a decedent.
In Matter of Tone, 186 App. Div. 361, the court construed the word “ child ” as not including grandchildren as the word is used in section 17 of the Decedent Estate Law, saying it has frequently been held, however, that the word “ child ” will also include “ grandchild,” where the intention to use the broader sense is evident. In Beebe v. Estabrook, 79 N. Y. 250, “ children ” under the law governing advancements was held to include grandchildren.
In Matter of Paton, 111 N. Y. 480, the court said, quoting Chancellor Kent: “ ' Children, as well as issue, may stand, in a collective sense, for grandchildren, where the justice or reason of the case requires it. ’ The word ‘ children ’ is a flexible expression, and we think that meaning should be preferred, when the reason of the thing sustains it, which permits the children of a deceased child to inherit.” The court, in Pfender v. Depew, 136 App. Div. 636, said: ' It is elementary law that as a general rule the words ' child ’ or ‘ children ’ when used in a will or other document, will be *540 taken to refer to the issue or descendants of the first degree, and to exclude descendants of a more remote degree. The rule, however, is not inflexible and there are many cases in which the word will be given a wider signification and read as standing in a collective sense for grandchildren or even more remote descendants.”
Where it appears from an entire will that it was the intention of the testator or where in a statute, either from the statute itself or the purpose of its enactment, or if the intention of the legislature is manifest, the words “ child ” or “ children ” will be given the comparison meaning of “ issue ” or “ descendants. ’ ’ Matter of Pulis, 220 N. Y. 196; Matter of Montgomery, 177 App. Div. 799. But the rule can be invoked' that the term “ child ” may include grandchild or issue, however remote, if it be established that justice, or reason or the structure of the devise, or statute warrants it. Pimel v. Betjemann, 183 N. Y. 194; Matter of King, 217 id. 358.
It is the rule that the word “ issue ” includes all descendants and unless some limitation can be pointed to, the word must be permitted to have its ordinary meaning. Soper v. Brown, 136 N. Y. 244; Schmidt v. Jewett, 195 id. 486; Matter of United States Trust Co., 36 Misc. Rep. 378. Whenever a lesser interpretation of the word “ issue ” is given, it is only because the context of the will showed such a meaning. Matter of Farmers Loan & Trust Co., 213 N. Y. 168; Matter of Union Trust Co., 170 App. Div. 176; affd., 219 N. Y. 537; Brown v. Tanz, 176 App. Div. 795; Matter of Wienholz, 16 Mills, 263 (Fowler, S.); Matter of Durant, 109 Misc. Rep. 62; Matter of Lawrence, 111 id. 524. The word “ issue is of even broader import than descendant and may include the children of a living parent. Hillen v. Iselin, 144 N. Y. 365. In Petry v. Petry, 186 App. Div. 738; affd., *541 227 N. Y. 621, Mr. Justice Page writes a luminous opinion upon the subject and analyzes the origin and the reason for the court’s construction of the word “ issue.” The word “ issue ” primarily means descendants. It is more ample and more extensive than the word “ child.” As the word “ issue ” is used in wills, its meaning is often subjected to the sidelight of other clauses or words of the will. In the interpretation of present section 35 of the Decedent Estate Law we have nothing to assist in solving the question save the fundamental reason for the law; the justice of the statute and the recent radical changes in the former section. There is a vast difference between construing the word issue as used in a will and as used in statute law. When we consider the statute involved in this case, unless we can find the legislative intent to be otherwise, we must give to the words “ any issue of such marriage ” their fullest meaning. There is nothing in the act itself to ¡suggest the slightest limitation upon the use of the word ‘ * issue. ’ ’ In fact every change created by the new section. indicates that the lawmakers meant to be liberal and make it conform to section 26 of the Decedent Estate Law.
The act itself is founded upon the broad principle of public policy. It points towards a public interest. It was passed for the benefit of the people at large as a measure of state polity. The statute was enacted for the benefit of those to whom the testator owed a duty, which the legislature assumed to require its discharge, when a testator failed to perform that duty. There is nothing in the statute upon which to predicate an intention to.give the word “ issue ” any other meaning than its ordinary one, and unless controlled or limited it must be held to embrace descendants. The Statutes of Descent and Distribution both recognize the right of descendants to take. Such a construction is just, fair *542 and equitable. In my opinion the intention of the legislature is manifest that the words “ any issue of such marriage ” mean the first lineal living descendants of the blood and the statute warrants such a conclusion. The very words “ revocation by marriage and birth of issue ” mean the recall of the right to make a will. The privilege granted is annulled, because of man’s failure to care for his "own. Eevocation here means intestacy, and intestacy under the law means the rights of descendants. In the instant ease it includes the grandchild of the decedent. Such a conclusion fits in with the sentiment of our people and the spirit of our institutions. Equity of descent is maintained and testator’s bounty by statute law is extended to those of his blood, his issue, his stock, his descendants. The infant Dorothea Schuster is entitled to one-half of the estate of the decedent.
Let order be entered admitting the will to probate and a decision entered declaring the rights of the infant and conforming to these views.
Decreed accordingly.