In the Matter of the Construction of the Will of BENJAMIN S. WELLES, Deceased. MARIAN K. FRELINGHUYSEN et al., Appellants; WILLIAM M. CRUIKSHANK et al., as Trustees, under the Will of BENJAMIN S. WELLES, Deceased, et al., Respondents.— In a proceeding by trustees under the will and codicil of Benjamin S. Welles, deceased, to obtain a judicial construction of articles 7 and 8 of said will insofar as they relate to the residuary trust created for testator's daughter Harriet, two of the testator's great-grandchildren, Marian Kingsland Frelinghuysen and George L. Kingsland Morris, appeal from so much of a decree of the Surrogate's Court, Suffolk County, entered November 13, 1959, as: (1) construes said articles 7 and 8 to mean "that none of the persons named in the petition and therein described as great-grandchildren and great-great-grandchildren of the testator is entitled to share in the distribution of the trust" for Harriet; and (2) as directs "that the principal of the [said] trust is distributable in equal shares to Ethel Kingsland Anderton, B. Sumner Welles and Emily Welles Robbins" testator's grandchildren, three of the respondents. Decree insofar as appealed from affirmed, with costs payable out of the estate to all parties filing separate briefs. In our opinion the language employed by the testator in article 8 of his will is clear and definite. Hence, we have no power to change it by judicial construction (cf. *Matter of Villalonga*, 6 N Y 2d 477; *Matter of Barnes*, 2 N Y 2d 787). Nolan, P. J., Ughetta and Brennan, JJ., concur; Pette, J., dissents and votes to modify the decree by striking out its first two decretal paragraphs and by substituting therefor provisions directing the distribution of the corpus of said trust in equal shares among the said three grandchildren, the said two great-grandchildren and the two brothers of the said great-grandchild, George L. Kingsland Morris, with the following memorandum: In my opinion, the isolated phrase " grandchildren then living " contained in the second paragraph of article 8, was not the sole measuring rod for the distribution of the trust corpus. This paragraph contained also the separate and independent sentence that it was additionally the testator's express desire that his property should be " enjoyed by those of my own blood ", a declaration which would be meaningless since the surviving grandchildren would necesarrily be of his " own blood ". The will read as a whole indicates that in the dispositive portions of all the trusts therein established, the testator somewhat loosely and indiscriminately used the terms " descendants," " children," " issue," and " grandchildren then living," as well as " those of my own blood ". The resultant testamentary document, therefore, may not be deemed a simple will, containing ordinary language, " not afflicted with the weakness of ambiguity " (cf. *Matter of Villalonga*, 6 N Y 2d 477, 481). However, throughout its text, there is found in the will the overriding intention by the testator to establish in all his trusts a pipeline of inheritance flowing from himself to his four children and their progeny in a direct line of descent. This purpose conformed to the family situation as it existed both in 1892 and 1898 when the testator's will and codicil were respectively drawn. On both dates, the testator's family consisted of his four children and five grandchildren who then comprised the natural objects of his bounty. For these children and grandchildren it appears that he wished to establish a basis for equality in the right of inheritance and to insure the end result that those of his " own blood " should alone enjoy his estate. There was thus made manifest the underlying testamentary plan that descendants " however remote " should be substituted for a deceased ancestor (cf. *Matter of Montgomery*, 177 App. Div. 799, 800). Under all the circumstances the ostensible per capita plan of distribution, found alone in the " grandchildren

then surviving" clause, must yield to the dominant purpose, spread throughout the will, of more than "a very faint glimpse of a different intention" to erect a stirpital scheme of distribution (*Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168, 174; *Matter of Durant*, 231 N. Y. 41). Accordingly, the principal of the trust for Harriet must be distributed in equal one-fifth shares to the said three of testator's living grandchildren, respondents; to appellant Marian Kingsland Frelinghuysen as sole descendant of George L. Kingsland, deceased grandchild of the testator; and to appellant George L. Kingsland Morris and to his brothers, as descendants of Helen K. Morris, the other deceased grandchild of the testator. To cut off the shares of appellants Frelinghuysen and Morris would destroy the party of distribution which lay at the core of the testator's plan to provide equally for all of his five grandchildren, and to make inheritance conditional only upon survival of Harriet, an intention not cognizable from the will when read as a whole. There is no evidence that the testator had the prescience to predict that Harriet would live on to the age of .100, and that he intended to disinherit such of his five grandchildren, or their progeny, who failed to survive her. Kleinfeld, J., not voting.