In the Matter of the Estate of THOMAS C. BENT, Deceased.

Surrogate's Court, New York County, February 10, 1932.

*Hartman, Sheridan, Tekulsky & Pecora,* for the executors.

*Charles C. Lockwood* [*I. Maurice Wormser, Charles C. Lockwood* and *Nathaniel L. Goldstein* of counsel], for Mrs. Marie C. Bent, the widow.

*Hann & Rapp* [*William J. Rapp* and *Charles G. Coster* of counsel], for Eileen T. Bent, as general guardian of infants Eilanna E. Bent and Sidney T. Bent.

FOLEY, S. The petitioning executors and trustees request a construction of the will. The widow contends that there was a statutory revocation of the instrument by reason of her subsequent marriage to the testator, Thomas C. Bent. In opposition, certain beneficiaries named in the will contend that under section 35 of the Decedent Estate Law (as amd. by Laws of 1919, chap. 293, since amd. by Laws of 1931, chap. 562) the widow was mentioned and provided for in the will in her prospective status as wife and that all of its provisions thereby remain unchanged. (*Matter of Scolpino,* 231 App. Div. 690; *Matter of Simon,* 232 id. 214; affd., 257 N. Y. 539, without opinion.) In the event that the surrogate decrees a revocation of the will, a further controversy arises as to whether the widow is entitled to take the legacies given to her in the will in addition to her intestate share. The will was executed on December 20, 1928.

The marriage took place on November 7, 1930. The decedent died on March 23, 1931.

(1) I hold that the will was revoked by the subsequent marriage because of the reference of the testator in the instrument to her as " my friend Marie C. Hannan." The reference to her is in a different status than prospective wife and the provision for her does not save the will from revocation. The situation, therefore, comes within one of the rules laid down by the Appellate Division, Second Department, in *Matter of Scolpino* (231 App. Div. 690). It is there stated that if the reference in the will to the woman who subsequently becomes the wife of the testator is in a different status, then the provision for her does not save the will from revocation. Further support for my conclusion may be found in *Matter of Gall* (57 Hun, 591; affd., 131 N. Y. 593) and in *Matter of Reilly* (130 Misc. 320).

In *Matter of Gall* the legacy to the subsequent wife was to her as " a former servant of my late wife." This characterization was held to be sufficiently clear to show that marriage was not anticipated. The will was deemed to be revoked. *Matter of Reilly* (*supra*) was decided by my colleague, Mr. Surrogate O'BRIEN. There the bequest was " to my dear friend, William F. Reilly." He was subsequently married to the testatrix. The legacy was stated in the will to have been given " on account of the many kindnesses and services which he has continually shown and rendered to me." These provisions were construed as having been made to him in a different status than a prospective husband. The will, therefore, was held to have been revoked as to him by reason of the subsequent marriage.

In *Matter of Scolpino* (*supra*) the legatee, at the time of the making of the will, was married to another person and the description of her in the will was in her then married name. The reference to her was in a different status than prospective wife. In view of this status, contemplation of subsequent marriage to her after the termination of her prior marriage could not have existed in the mind of the maker of the will and revocation was decreed.

The situation in the pending estate and the authorities just reviewed are in contrast with the facts in *Matter of Simon* (232 App. Div. 214; affd., 257 N. Y. 539). There the prospective wife was specifically mentioned in the legacy as " my *fiancée*, Grace Stechen." It was held that she was both mentioned and provided for under the statutory plan. Revocation, therefore, never became effective. That will contained an additional paragraph, which expressly recited the contemplated marriage. It read: " I make the bequests as above specified, knowing that I am about to be married to Grace

Stechen and desire that the bequests as herein made shall be in force and effect after my marriage as well as at the present time."

(2) A subordinate question arose upon the hearing of this proceeding with respect to the right of certain beneficiaries to offer extrinsic evidence of the situation existing at the time of the making of the will. They offered to prove that at that time Marie Hannan Bent was the common-law wife of the decedent. She, as widow, repudiates any claim on her part that such a relationship existed between herself and the decedent at any time. A ceremonial marriage between them took place two years after the date of the will and was formally solemnized by a minister. The surrogate excluded the extrinsic evidence. The material facts, including the relationship of the decedent to the beneficiary named in the will at the time of the execution, may be proven in the ordinary case. (*Matter of Del Genovese*, 169 App. Div. 140; *Adams* v. *Winne*, 7 Paige Ch. 97; *Brush* v. *Wilkins*, 4 Johns. Ch. 506; *Matter of Smith*, 254 N. Y. 283, 289.) Extrinsic evidence, to vary the plain language of the will, is not admissible. Here the description of Miss Hannon used in the will by Mr. Bent, the testator, was "my friend." As a practical matter, a formal ceremonial marriage is usually inconsistent with an alleged prior common-law marriage between the same parties. It is an essential element of a common-law marriage that there be a present agreement of marriage between the parties. (*Matter of Haffner*, 254 N. Y. 238; *Gall* v. *Gall*, 114 id. 109; *Hynes* v. *McDermott*, 91 id. 451.) The husband in his will by his reference to the legatee as "my friend" negatives any such agreement. The widow, relying on the religious ceremony, refuses to have the dubious relationship of a common-law wife fastened upon her. Proof of cohabitation or repute is futile and incompetent where, as here, the man and woman involved have each disavowed the existence of the indispensable requisite of an agreement of marriage.

Parol evidence is not permissible to explain the intent of a testator in the use of a word where the intent is clear. In certain cases of ambiguity, such evidence, including the instructions of the testator, may be received to identify the beneficiary or the object of the legacy. (*Baumann* v. *Steingester*, 213 N. Y. 328.) With these exceptions direct declarations of intention made by the testator to the draftsman or to other witnesses either before or at or after the execution of the will are never competent to effect a construction of the will. (*Reynolds* v. *Robinson*, 82 N. Y. 103, 106; *Adams* v. *Winne*, 7 Paige Ch. 97.) Under this rule the instructions of the testator to his lawyer as the draftsman of the will were excluded by me. Parol proof is never admissible to contradict, enlarge or vary the written terms of a will. It must not be received to show

that the maker of the will did not mean what he has said in words employed in it.

Where the language of the will, even when read in the light of extrinsic circumstances, admits of but one construction, parol evidence must be excluded. (*Dwight* v. *Fancher*, 245 N. Y. 71; *Matter of Smith*, 254 id. 283; *Brown* v. *Quintard*, 177 id. 75, 83; *Matter of Disney*, 190 id. 128; *Matter of Milliette*, 123 Misc. 745; *Matter of Shumway*, 138 id. 429.) This rule of exclusion of parol evidence has been applied by me only by reason of the peculiar facts of the present proceeding. Cases may arise where the proof of a ceremonial marriage prior to the will may be received despite the contradictory description of the legatee in the will. Again a valid common-law marriage, particularly to effect legitimizing of the issue, might be proven to have existed at the time of the will. Neither of these situations is present here.

(3) I further hold that the widow is entitled to take only her intestate share and that she may not receive in addition the benefits given to her under the will. The industry of counsel for the various parties, and the research of the surrogate have failed to reveal any decision in New York upon this phase of the controversy. In the cases construing the section and upholding a revocation, the opinions are silent as to this question and the surviving spouse appears to have accepted the intestate share in lieu of the legacy. The effect of section 35 of the Decedent Estate Law upon the will by a subsequent marriage and the survivorship of the husband or wife is declared by its terms to be that the " will shall be *deemed revoked as to them,* * * * and such surviving husband or wife, and the issue of such marriage, shall be entitled to *the same rights in,* and to *the same share or portion of the estate* of said testator as *they would have been, if such will had not been made.*" The latter clause was inserted by the amendment of 1919 (Laws of 1919, chap. 293). Previously the revocation of the will was complete. Thereafter it became partial only to permit the surviving spouse to participate. The terms of the will stand except as modified by the withdrawal of the intestate share.

It fairly appears by the context of the section that the Legislature intended that any benefits contained in the will for the subsequent wife should be annulled by its revocation. In other words, the intestate share was intended by the Legislature to be in lieu of every testamentary provision. Otherwise an absurd and unjust result would follow. If the estate consisted of $300,000 and the will contained a bequest of $200,000 to the prospective wife in the capacity of friend, the statutory revocation under the construction urged would permit the widow to take the legacy plus the intestate

share. Thereby the whole estate would be absorbed by her even though her intestate share happened to be only one-third or one-half of the estate. No such legislative purpose is disclosed in the statute.

Under the language of the section the will is revoked as to the wife. She relinquishes every bequest in it. In lieu of these legacies she gains by the statutory revocation her full intestate share of the estate. No question of any right to a statutory election is indicated in the section. Revocation (in the absence of an antenuptial settlement or testamentary provision or mention) becomes automatic upon the subsequent marriage and the gifts to the wife in the will are nullified. " Revocation in such circumstances works no hardship. It brings about a descent and distribution under the just and politic rules prescribed for intestacy." (*Matter of Del Genovese*, 169 App. Div. 140.) The authorities relating to the right of dower or the right of election given to a widow under the specific grant by new section 18 of the Decedent Estate Law (as added by Laws of 1929, chap. 229) have no application to the present situation. The will is revoked as to the widow and she is limited to her intestate share. The gifts to her in the will are likewise revoked.

While it is not material to the disposition of the issues here, the consideration of the question demonstrates the uncertainties of the existing law. The inheritance of property should be governed as far as possible by fixed and definite rules. The test of revocation of the will should be precise and absolute. The fact of marriage subsequent to the will should alone govern. Retention of the recognition of an antenuptial settlement made *inter vivos* is desirable. Under the present state of the law too much is left to the ascertainment of the actual status of the parties at the time of the execution of the will. The courts must determine in other cases what is a reasonable time between the date of the will and the subsequent marriage. (*Matter of de Coppet*, 142 Misc. 816.) Difficulty also arises in the search for the intent of the testator by judicial interpretation of the will. The provisions for issue of a marriage under section 35 are surplusage, for the rights of issue are protected by the specific provisions of section 26 of the Decedent Estate Law. Despite the attempt of the revisers of 1830 to clarify the section, the warning of Chancellor KENT that " Courts would be running the hazard of substituting their will for that of the testator " (*Brush* v. *Wilkins, supra*), still applies. The wisdom of adopting improvements in section 35, however, rests with the Legislature.

Submit decree on notice construing the will accordingly.