In the Matter of the Estate of Louis C. de Coppet, Deceased.

Surrogate's Court, New York County, February 10, 1932.

*Daniel J. Mooney*, for petitioners, executors.

*Frank L. Warrin, Jr.* [*Bartholomew B. Coyne* of counsel], for contestant, widow.

Foley, S. In this probate proceeding the decree admitting the will of Louis C. de Coppet reserved for future determination by supplemental decree two material issues: (1) The domicile of the testator at the time of his death and whether in New York county, or in Paris, France; (2) the rights in the estate of Helene de Coppet, the widow, by reason of her marriage to the decedent after the making of his will and whether thereby the will was revoked under the terms of section 35 of the Decedent Estate Law (as amd. by Laws of 1919, chap. 293).* The first question has been determined by the surrogate and the legal residence of the testator held to have been in the county of New York. (*Matter of de Coppet*, 141 Misc. 406.)

The disposition of the second issue with respect to the effect of section 35 upon the will must now be made. Mr. de Coppet was a member of the New York Stock Exchange. He left an estate of approximately $2,500,000. He made preliminary bequests in his will to domestic servants, employees, business associates, friends and relatives. The residue is distributable in fractional shares. One-sixth is bequeathed to his brother, other fractional parts are bequeathed to other relatives, and to associates and employees in his business. The material bequest to his subsequent wife is in

* Since amd. by Laws of 1931, chap. 562.— [Rep.

her maiden name " to Helen Gerardot, one-twelfth part thereof." By a codicil he substituted a charitable corporation for one of his partners named in the will as one of the residuary legatees. After the execution of the codicil he married Helene Gerardot. She, as his widow, contends that the subsequent marriage revoked the will as to her, and that she is entitled to her intestate share of the estate. The executors, on the other hand, contend that the bequest of a share of the residue was a provision made by Mr. de Coppet for his future wife within the terms of section 35. They urge that the legacy given to her was intended to be an antenuptial bequest. I hold that the contention of the executors must be sustained, that the provisions of the will meet the requirements of the statute and that the statutory revocation did not become effective because of the status of Miss Gerardot, at the time of the execution of the will and the codicil, as a prospective wife.

The context of section 35 of the Decedent Estate Law on January 11, 1931, the date of death of Mr. de Coppet, read as follows: " Revocation by marriage. If after making any will, such testator marries, and the husband or wife, or any issue of such marriage, survives the testator, such will shall be deemed revoked as to them, unless provision shall have been made for them by some settlement, or they shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and such surviving husband or wife, and the issue of such marriage, shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as they would have been, if such will had not been made." The provisions of the section had existed in this form from 1919, when fundamental amendments were made to it. In that year section 36 of the Decedent Estate Law, which related exclusively to the will of an unmarried woman and the effect of her subsequent marriage, was repealed. In accordance with the policy of making the rights of the surviving husband and wife uniform, section 35 was amended to include the will of a woman who later married. Previously, in the case of a man's will, both a subsequent marriage and subsequent birth of surviving issue were required to concur in order to make the revocation applicable to the issue. If the issue were provided for and the prospective wife unprovided for in the will, the wife got nothing by way of intestacy. (*Matter of Del Genovese*, 169 App. Div. 140.) By the amendment of 1919 the birth and survival of issue were no longer made additional requirements. By the amendment also the revocation, when effective, became *pro tanto* only. The other terms of the will stood except as modified by the partial revocation

and the surviving spouse took his or her intestate share. The various decisions rendered before or after 1919 must, therefore, be carefully examined in order to test the existing form of the section at the date of death of the decedent.

The effect of the section, as changed by the Legislature in 1919, was carefully summarized by Mr. Justice CARSWELL of the Appellate Division, Second Department, in *Matter of Scolpino* (231 App. Div. 690). For convenience of division, the rules enunciated by him have been numbered by me.

(1) When a testator marries after making a will, it is revoked unless the manner of reference to the individual named as legatee is such as fairly to warrant the view that the reference or bequest to her is in her prospective or new status of wife.

(2) If the reference to her is in a different status, then the provision for her does not save the will from revocation. (*Matter of Gall*, 57 Hun, 591; affd., 131 N. Y. 593; *Matter of Reilly*, 130 Misc. 320; *Matter of Bent*, 142 id. 811.)

(3) If the reference to her is by her maiden name, but the period of time between the making of the will and the marriage of the parties is short, and the provision in the will is of such a character as to indicate that it was made by the testator with the change of status in mind, then the provision in the will may be construed to have been made in contemplation of the new status, and the presumption of revocation is overthrown. Such a provision is construed to be an antenuptial bequest. (*Matter of Gaffken*, 197 App. Div. 257; affd., 233 N. Y. 688.)

(4) If the language of the will is of such a character as to be fairly construed as indicating that the testator, with the prospective status in mind, made the provision for the individual considered in his or her prospective status, even though there be a considerable lapse of time between the making of the will and the marriage of the testator, such language so construed overthrows the presumption. (*Matter of Lally*, 136 App. Div. 781; affd., 198 N. Y. 608.)

We are concerned, therefore, with the application of these rules to the circumstances of the present estate.

The section prohibits the reception of extrinsic evidence to rebut the presumption of revocation " except as herein provided." The origin and history of that prohibition, which was enacted on the recommendation of the revisers of 1830, may be found in *Matter of Del Genovese* (169 App. Div. 140), in *Matter of Scolpino* (*supra*) and in Fowler's Decedent Estate Law, page 264. In the *Del Genovese* case extrinsic proof of additional property, acquired by the testator after the making of the will, was held to be inad-

missible. The proof of the existing state of material facts, at the time the will itself was made, was held to be competent and not prohibited by the statutory inhibition against extrinsic evidence. (*Brush* v. *Wilkins*, 4 Johns. Ch. 506, KENT, C.) In *Adams* v. *Winne* (7 Paige Ch. 97, 99) the rules for the reception or rejection of parol proof were accurately stated by Chancellor WALWORTH. The making of an antenuptial agreement may of course be proven.

The chronology of events in the pending estate and the surrounding circumstances at the date of the execution of the will become important. Mr. de Coppet had been previously married. His first wife had died prior to January 1, 1929. His present widow had been a maid in their home. In May, 1929, it has been clearly established by the evidence of witnesses produced by the widow, that a formal betrothal of marriage, under the French custom, was publicly announced by Mr. de Coppet and Miss Gerardot to her mother and her family. The testimony submitted to me of her mother, brother and sister established this fact. At that time, in May, 1929, he declared that he would return to France to marry his acknowledged *fiancée* in December, 1929. He executed the will here in question on October 25, 1929. On November twenty-seventh of that year he executed the codicil in which he specifically stated: " I hereby ratify and confirm my said last will and testament in every respect save so far as any part of the same is inconsistent with this Codicil." Within a few days he sailed for France and on December sixth he is at Asnieres, near Paris, at the home of his prospective bride's sister.

Then follow in close sequence the formal preliminary steps required under the French custom or law, which include a sworn declaration by Mr. de Coppet before the United States Vice Consul in Paris of his status as an American citizen, and the declaration of his *fiancée* as to her status and domicile. On December 28, 1929, the banns of marriage are formally posted. On January 9, 1930, the official certification of the completion of publication of the banns is made. On January 11, 1930, they were married at Rheims.

We have, therefore, clearly established the status of Helene Gerardot as a prospective wife at the time of the execution of the will and at the date of the making of the codicil. There elapsed also a comparatively short period, consistent with the circumstances, between the date of the will and the marriage, and a briefer period between the date of the codicil and the marriage. The marriage took place approximately eighty days after the will and forty-five days after the codicil which expressly republished the will. With these material facts in evidence, the intent of the

testator to remember Helene Gerardot in his will as a prospective wife becomes clear.

In *Matter of Gaffken* (114 Misc. 693; affd., 197 App. Div. 257; affd., 233 N. Y. 688) the will of the testator mentioned the subsequent wife by her maiden name only (as in the present case) without characterization as " friend " or " *fiancée*," and without any reference to the approaching wedding. In it the legacies were one-third of the estate to Marie Louise Krom (the subsequent wife) and two-thirds to the testator's mother. The marriage took place two days after the will was made. The statutory revocation was held not to be effective. In that case the parties resided in the same locality. In the present estate not more than five days elapsed between the execution of the codicil and the testator's sailing from New York for France. Here a necessarily longer period had to occur because Mr. de Coppet was in New York at the time of the making of the will and codicil and was required to journey abroad for the solemnizing of his marriage. Moreover, the preliminary formalities under the French law necessarily extended the time before the marriage could take place. But in addition under one of the rules laid down in the *Scolpino Case* (*supra*), regardless of the duration of the period which elapsed, the actual status of the engaged couple in the present estate at the time of the execution of the testamentary instruments makes clear the nature of the antenuptial bequest. Status alone nullifies the presumption of revocation.

It is claimed, however, by counsel for the widow in the present estate that certain letters written by Mr. de Coppet to Miss Gerardot shortly before the execution of the will indicated a change on his part of his intention to marry her. It is claimed that they show that the engagement between him and his *fiancée* had been broken and that the will and codicil executed shortly thereafter could not have contemplated a prospective marriage. His letters were written in answer to communications sent from France by her. His letters are in evidence. Hers are not in evidence and their import may only be inferred. Apparently she believed, or pretended to believe, that he had become neglectful by not writing to her. In fact he had been seriously ill. There was no specific declaration by him in his letters that the engagement was broken. He resents her accusations of any cooling of his ardor. She may choose another husband, if she pleases. Actually she did not. But he writes: " I have not changed towards you the least little bit in the world." His final salutation is: " I embrace you, nevertheless." Whatever may have been her purpose or motives, his determination is to go to France as soon as possible to marry her. The tone of her missives must have been intended to remind

him of his promise to return in December for that purpose. The most that can be said is that this correspondence indicates a temporary lovers' quarrel which in no way weakened his resolution or his determination that the pending engagement was promptly to culminate in marriage.

I find no indication in other parts of the will that the bequest to Helene Gerardot was as a friend. Indeed, an examination of its provisions demonstrates a contrary intent. The servants in the house (including her sister), his employees and former employees are remembered with relatively small pecuniary bequests in separate paragraphs. The prospective wife is placed in the more important group in the residuary clause with the nearer objects of his bounty. The language of the will and the codicil clearly meets the statutory requirements. Provision was made by the testator for her as his prospective wife. He had in mind the actual engagement of marriage existing between them and made the gift in the will to her with the approaching wedding plainly in mind. The will, therefore, stands unrevoked.

Submit supplemental decree on notice accordingly.