In the Matter of the Estate of MARY A. GUILMARTIN, Deceased.

Surrogate's Court, Kings County, September 30, 1935.

*Mitchell, Taylor, Capron & Marsh,* for the petitioner.

*William S. Siemon,* special guardian.

WINGATE, S. Since the rendition of the learned and lucid decisions of Justice CARSWELL in *Matter of Scolpino* (231 App. Div. 690) and of Surrogate FOLEY in *Matter of De Coppet* (142 Misc. 816; affd., 237 App. Div. 810), the rules respecting the testamentary provisions which will avoid the operation of section 35 of the Decedent Estate Law, partially invalidating a will by a subsequent marriage, have ceased to be the source of perplexity to bench and bar which they previously were.

The question presented herein, while analogous in general concept, appears never before to have been made the subject of judicial determination in this State, and concerns the operation of the somewhat similar section 26 of the Decedent Estate Law.

The will in question is dated on July 14, 1926. The entire dispositive direction is contained in its second item, which directs that testatrix's estate be divided into two parts. The first is given outright to testatrix's niece, Hazel Abrams. The second is erected into a trust, the income of which is payable to or for " my friend,

Helen Nierychlewski, daughter of Teodor Nierychlewski," until she attains the age of twenty-six years, at which time the principal is payable to her. A direction is included requesting the "trustees not to pay over any part of the income of said trust during the minority of said Helen Nierychlewski to her said father, Teodor Nierychlewski," but to make application thereof for her needs either directly or through some other person.

Helen Nierychlewski was legally adopted by the testatrix by order of this court dated February 7, 1933, and the question presented is as to whether, by reason of the provisions of section 26 of the Decedent Estate Law, this adoption effected a partial revocation of the will which was executed over six and a half years before.

This section reads:

"§ 26. Child born after making of will. Whenever a testator shall have a child born after the making of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child, so after-born, unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and legatees in proportion to and out of the parts devised and bequeathed to them by such will."

In *Bourne* v. *Dorney* (184 App. Div. 476; affd., 227 N. Y. 641) the Appellate Division of this Department, in an elaborate and convincing opinion, determined that this section applies to a child legally adopted after the foster parent has made a will which neither mentions nor makes provision for such child and "that an adopted son receiving from the adoptive parent all the dues of sonship and imparting to the father all that would flow to him from a natural child, cannot be invited to a son's inheritance and right to inherit against a former will, and yet be disinherited by such will" (p. 485). (See, also, *Matter of Hardenbergh*, SLATER, S., 144 Misc. 248, 250; *Matter of Marsh*, 143 id. 609, 613.)

As the composite result of the statute and of this decision, it follows that the present adopted child is entitled to "succeed to the same portion of such parent's real and personal estate as would have descended or been distributed to such child, if such parent had died intestate," if it appears that she was "unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will."

It is, of course, obvious that the word "settlement," both in this section and in section 35, connotes some financial arrangement in

the interest of the favored individual which is consummated during the life of the testator. (*Matter of Snopek,* 149 Misc. 665, 668; *Matter of Simon,* 232 App. Div. 214, 215; affd., 257 N. Y. 539; *Matter of Mosher,* 143 Misc. 149, 158.) In both sections this term is used in contradistinction to " provided for," which equally clearly contemplates the giving of a testamentary benefit as distinguished from the *inter vivos* advantage secured by the settlement.

Since, in the case at bar, there is no intimation that any *inter vivos* arrangement on behalf of the adopted daughter had ever been made, the present inquiry narrows itself to the single question of whether the testamentary gift to " my friend, Helen Nierychlewski, daughter of Teodor Nierychlewski," made six and a half years before the adoption, is a sufficient compliance with the statutory requirement that this child shall be " provided for " or " in any way mentioned in such will."

If the decision is to be founded on the analogy of section 26 to section 35, it is obvious that this question must be decided in the negative, since the gift and " reference to her is in a different status." (*Matter of Gall,* 10 N. Y. Supp. 661, 662, 663, reported by memorandum only, 57 Hun, 591; affd., 131 N. Y. 593; *Matter of Scolpino,* 231 App. Div. 690, 692; *Matter of Reilly,* 130 Misc. 320, 332; *Matter of Bent,* 142 id. 811, 812; *Matter of De Coppet,* Id. 816, 818; *Matter of Mosher,* 143 id. 149, 159; *Matter of Neufeld,* 145 id. 442, 444.) The provision in the will for her benefit is in the status of " My friend " and the record is devoid of any intimation that the testatrix contemplated a change to the infinitely closer relationship of daughter until several years had elapsed after the drawing of the testamentary instrument.

The real question for decision, therefore, is as to whether the two enactments are in *pari materia.* That the reasons for the two rules are identical, and are based on the doctrine of implied revocation, is entirely obvious from a perusal of the pertinent authorities which are conveniently collected in the elaborate and illuminating opinion of Surrogate SLATER in *Matter of Mosher* (143 Misc. 149), in which this learned jurist traces the inception and development of the doctrine from a period antedating the Christian era.

In view of the overwhelming amount of pertinent discussion and elucidation which has become a part of the literature of the subject with the passing of the centuries, independent ratiocination by this court respecting it would be a labor of supererogation. The task of clarification, therefore, becomes merely one of selection from the innumerable authoritative pronouncements upon the subject. Perhaps no more lucid statement is to be found in the books than that of Chancellor KENT in his epoch-making decision in *Brush* v.

*Wilkins* (4 Johns. Ch. 506). He says (on pp. 518, 519): " The general reasoning on this subject, in favor of the revocation, is, that the testator having contracted new relations, such as those of husband or father, he must have intended a revocation of his prior will, because he must have meant to discharge the moral duties attached to those relations. * * * A stronger presumption of the testator's change of mind, arises from the birth of subsequent children; for they cannot like the wife, take care of themselves, by a suitable settlement, nor have they any fixed, unalienable provision, as the wife has, out of the real estate. They have, therefore, a very strong natural and moral claim to a competent support and provision, out of their father's property." (See, also, *Matter of Simon*, 232 App. Div. 214, 215; affd., 257 N. Y. 539.)

This doctrine, while originally based on the common law, almost immediately took its place among the statutory rules of this State (2 R. S. pt. 2, chap. 6, tit. 1, art. 3, §§ 43, 49), and in varying and progressively liberalized form has continued in force for over a century.

In view of the identity of reasons underlying the statutory rules protecting subsequent wives on the one hand, and children on the other, it is apparent that the great mass of authority which has grown up in respect to the former relationship is equally applicable to the latter. The assumption of new obligations of parenthood subsequent to the making of the will raise an irrebuttable presumption of a desire on the part of the testator of a wish for *pro tanto* revocation of the previously executed will in the absence of circumstances clearly demonstrating that the change in status which subsequently occurred was clearly in his mind at the time of the execution of the instrument. As is clearly stated by Surrogate SLATER in *Matter of Mosher* (143 Misc. 149, at p. 158), the fact that some sizeable benefit was given by the will to the affected person is wholly immaterial, since *non constat*, if the testator had drawn the will with the changed status in mind, it would not have been greater.

In the case at bar the provision was made for " my friend," the daughter of another. No intimation has been made that at the time of the execution of the will the testatrix contemplated that the person referred to would become her own daughter and, although adopted, possessed of legal and moral claims upon her equal to those of a natural child. (*Rosekrans* v. *Rosekrans*, 163 App. Div. 730, 732; *United States Trust Co.* v. *Hoyt*, 150 id. 621; *Matter of Marsh*, 143 Misc. 609, 613.) The rule is, therefore, applicable, and the will stands revoked as to the daughter by virtue of the statutory direction.

The result is that, so far as concerns Helen Guilmartin (formerly Nierychlewski), the will is a nullity, and she is entitled to take in precisely the same manner and to like extent as if her foster mother had died intestate. (*Matter of Bent*, FOLEY, S., 142 Misc. 811, 814, 815.) In other words, since under subdivision 5 of section 83 of the Decedent Estate Law, she is the sole statutory distributee, she is entitled to receive the entire estate outright.

Enter decree on notice.