In the Matter of the Will of HENRY KELLY, JR., Deceased.

Surrogate's Court, Westchester County, October 1, 1943.

*Patrick J. Dobson* and *William M. Smith* for Martin Sweeney and another, as executors of Henry Kelly, Jr., deceased.

*William A. Durcan* for Edward J. Kelly and another, distributees.

*William L. Woodward* for George Ehlenberger.

*George Gray* for Nursing Sisters of the Sick Poor, legatee.

*Thomas F. J. Connolly* for Lucy Shea and others, legatees.

*James M. Snee,* special guardian for Richard Kelly, distributee and legatee.

*Lawrence T. Gross, Jr.,* special guardian for Hugh Kelly and others, legatees.

MILLARD, S. The principal question to be considered herein is whether one Richard Kelly, an infant adopted by the testator after the execution of the will, is provided for or mentioned therein, or was provided for by settlement within the purview of section 26 of the Decedent Estate Law.

The will of decedent was executed on December 13, 1935. The infant, thereafter adopted by the testator and his wife, was born on December 3, 1924, and resided with them continuously from on or about June 18, 1926. The widow and said adopted child of the deceased are his sole distributees. By a decree of the Surrogate's Court of New York County, dated July 21, 1927, the testator was appointed general guardian of the person and estate of said infant. After the execution of his will and in the month of September, 1936, the testator caused a policy of insurance in the sum of $10,000 to be issued upon the life of said infant, and named his wife, referred to in the policy as the mother of the assured, as beneficiary, if living, reserving the right to change the beneficiary. If no substitute beneficiary has been designated, the policy by its terms is payable to the estate of said infant upon the death of his foster mother. As of the date of death of decedent this policy had a cash surrender value of $260.

On September 11, 1936, the testator also caused to be issued on the life of his wife an endowment policy in the sum of $8,250 payable five years from date, and named the respondent infant, therein described as the son of the insured, as the beneficiary thereof. On the death of the assured within the five-year period the proceeds were payable to said infant. Since the death of the testator quarterly payments of $375 have been made to the widow of decedent pursuant to the provisions of

the latter policy. Said infant therefore will presumably become entitled to receive only the unpaid balance of the proceeds of said policy, if any, unpaid at the death of the insured. Premiums on this policy totaling $8,629.66 were paid by the testator; the sum of $5,199.80 having been paid prior to the adoption, and the sum of $3,429.86 having been paid thereafter.

On June 23, 1938, approximately two and one-half years after the execution of his will, said child was adopted by the testator and his wife. The child resided with the testator to the time of his death, and still continues to reside with the widow of the testator.

Under the will such child was the beneficiary and remainderman of a trust for $30,000, a remainderman of a portion of the trust created for testator's wife, and a residuary legatee. Although the will contained substantial provisions for the benefit of said child, it has been held that the amount of the benefit is immaterial since it does not follow that such benefits would not have been greater if the will had been drawn with the changed status in mind. (*Matter of Mosher,* 143 Misc. 149; *Matter of Guilmartin,* 156 Misc. 699, affd. 250 App. Div. 762, affd. 277 N. Y. 689.)

In the will the testator herein repeatedly referred to said infant as " my son Richard Kelly " or as " my son Richard ". Said infant is therefore not only uniformly described by the testator as his son, but he also is designated by the surname of the testator rather than by the surname of the natural parents of the child. Section 115 of the Domestic Relations Law accords to an adopted child and the foster parent the rights of parent and child, and imposes upon them the same obligations of such relationship, including the right of inheritance of each from the other. Notwithstanding that no specific reference to adopted children is found in section 26 of the Decedent Estate Law, it is well settled that a child adopted after the execution of the will is thereby afforded the same rights as after-born children. (*Bourne* v. *Dorney,* 184 App. Div. 476, affd. 227 N. Y. 641; *Matter of Griffin,* 159 Misc. 12; *Matter of Guilmartin, supra.*)

So far as research discloses, the precise question presented herein has not been the subject of previous judicial determination. In *Matter of Guilmartin (supra)* the child thereafter adopted was referred to by the testator as " my friend " and described as the daughter of a third person. The court there held that the child thereafter adopted was not mentioned in the will or otherwise provided for therein within the meaning of section 26 of the Decedent Estate Law. In the case of *Fulton*

*Trust Co.* v. *Trowbridge* (126 Conn. 369) the Supreme Court of Errors of Connecticut held that a child thereafter adopted but referred to in the will as "Peter Trowbridge" was not mentioned therein, although the testator had used his own surname in describing the child. The governing Connecticut statute differs slightly from section 26 of the Decedent Estate Law in that it is provided thereunder that the birth or adoption of a minor child shall operate as a revocation of the will if no provision shall have been made in the will for such contingency. Much of the apparent conflict in the decisions of the courts of other States is accounted for by the differing phraseology of the applicable statutes. (*Matter of Mosher,* 143 Misc. 149, *supra.*) Moreover, in *Fulton Trust Co.* v. *Trowbridge* (126 Conn. 369, *supra*) the testator did not describe the child in the prospective relationship which was subsequently created.

The purpose of the controlling statute was set forth in *McLean* v. *McLean* (207 N. Y. 365, 371) as follows: "The fundamental object of the statute which has been quoted is to guard and provide against such testamentary thoughtlessness and lack of vision as prevent a testator from contemplating the possibility of after-born children and taking such possibility into account in framing a scheme for the testamentary disposition of his property."

The court then proceeds to state that it has never held or assumed that it was the intention of the Legislature to compel, regulate or control testamentary provision, even by a parent, for children, provided that in the disposition of his property he looked into the future, foresaw and took into account its possibilities in the way of after-born children.

In *Matter of Guilmartin* (156 Misc. 699, *supra*) the Surrogate enunciated the following rule in considering whether a child adopted after the execution of a will was mentioned or provided for therein: "The assumption of new obligations of parenthood subsequent to the making of the will raise an irrebuttable presumption of a desire on the part of the testator of a wish for *pro tanto* revocation of the previously executed will in the absence of circumstances clearly demonstrating that the change in status which subsequently occurred was clearly in his mind at the time of the execution of the instrument."

The reasoning of the Surrogate in *Matter of Guilmartin* was approved by the Appellate Division of this department (250 App. Div. 762) and the determination reached was affirmed by the Court of Appeals (277 N. Y. 689). From a reading of the will it must be concluded that in the disposition of his

property this testator contemplated at the time the possibility of the future adoption of said child and took such possibility into account in the scheme for the testamentary disposition of his property. In arriving at this conclusion the court has not considered the extrinsic evidence offered to establish that the testator contemplated such adoption.

The repeated references in the will to such child as "my son Richard Kelly" and "my son Richard", in the opinion of this court clearly indicate that the change in status which subsequently occurred was clearly in the mind of the testator at the time of the execution of the will. The will not only designated such child by the surname which testator bore, but also uniformly described said infant in the contemplated change of relationship thereafter created. The lapse of time between the execution of the will and the adoption of said infant does not negative the conclusion reached that the testator by referring in his will to such child as his son, *in præsenti*, must be deemed then to have had clearly in mind the change of status which subsequently occurred.

An analogy may be drawn between section 26 of the Decedent Estate Law and section 35 thereof, relating to wills executed prior to September 1, 1930, wherein it is provided that by a subsequent marriage such a will shall be deemed revoked as to the surviving spouse "unless provision shall have been made for such survivor by an ante nuptial agreement in writing". In *Matter of de Coppet* (142 Misc. 816, affd. 237 App. Div. 810), it was stated in an opinion by Surrogate Foley that a will was not revoked by a subsequent marriage if a fair construction of the will indicated that the testator, with the prospective status in mind, made provision for such individual in such prospective status, even though a considerable time elapsed between the making of the will and the marriage of the testator, citing *Matter of Lally* (136 App. Div. 781, affd. 198 N. Y. 608). The learned Surrogate, under the authority of *Matter of Gaffken* (197 App. Div. 257, affd. 233 N. Y. 688), stated therein that even where the individual was not referred to in the prospective status, if the intervening time were short and the provisions of the will were such as to indicate that the will was drawn by the testator with a change of status in mind, such will would not be revoked by a subsequent marriage. In *Matter of Scolpino* (231 App. Div. 690, affg. 137 Misc. 58), the Appellate Division of this department held that the subsequent marriage of the testator revoked the will "unless the manner of reference to the individual named as legatee is such * * * that the

reference  *  *  *  to her is in her prospective or new status of wife."

The application of the foregoing rules to the somewhat analogous provisions of section 26 of the Decedent Estate Law confirms the conclusion that the testator, in referring to the infant herein as his " son ", concurrently contemplated said child in the prospective status thereafter created by the adoption. Of particular significance as indicative of this result is the grant in the will of the right of burial in the family plot " to my said wife, Evelyne Kelly and my son Richard Kelly."

In view of the conclusion reached, it is unnecessary to consider whether said child was " unprovided for by any settlement ". The claimed provision for settlement was in the form of two insurance policies, one on the life of the child and the other on the life of testator's wife. In *Matter of Jones* (134 Misc. 26) it was stated, however, that the statute does not require that the settlement should be of any particular kind or such as the courts would approve. It was there held that the statute was complied with when the testator had performed an act independently of the will, indicating an intention to make future provision for an after-born child. In *Matter of Brandt* (121 Misc. 102) an insurance policy procured by the testator on his own life was held to be a settlement notwithstanding that one or both of the after-born children might not, under certain contingencies, receive any actual benefit under the policy. Although in the instant case both policies were issued prior to the adoption, the child is referred to therein as the son of the testator and the testator caused said policies to be continued in force after the adoption of the child by the payment of premiums thereon.

The court accordingly determines that said infant was not only mentioned and provided for in said will, but is also of the opinion that said child also was provided for by settlement within the purview of section 26 of the Decedent Estate Law. Said infant therefore is not entitled to the share which he would have been entitled to recover if the decedent had died intestate.

With respect to the remaining matters as to which a construction has been requested, and as to that phase of the proceeding which seeks advice and directions, any determination thereon will be deferred until the close of the hearing to be had in this proceeding, as hereinafter directed.

Settle intermediate decree accordingly, providing that this proceeding be restored to the calendar for October 19, 1943,

for hearing and disposition of such remaining issues. Upon proof that such decree has become final the executors may apply for an order modifying the decree of this court dated February 8, 1943, to the extent of canceling the bond given by the executors permitting them to continue to serve as executors without bond, removing the limitation upon the amount of interest income and dividends which may be collected or received by them, and removing the restraining provision against the sale, mortgage or conveyance of any realty of which the decedent died seized.