In the Matter of the Estate of MAX FABER, Deceased. HELEN FABER et al., as Executrices of MAX FABER, Deceased, et al., Respondents; SANDRA D. FABER, by Her Special Guardian JOSEPH F. SCIRTO, Appellant.

Fourth Department, July 9, 1952.

*Joseph F. Scirto,* special guardian for Sandra D. Faber, an infant, appellant.

*Ellsworth Storrs* for Helen Faber and Rose Segal, executrices, respondents.

*Daniel P. Falsioni,* special guardian for Adell Faber, an infant, respondent.

KIMBALL, J. This appeal presents the question of the rights of an after-born child in the estate of her father and an interpretation of section 26 of the Decedent Estate Law. The testator died April 6, 1950. His will was executed July 30,

1946. By this instrument he made certain provisions for his wife and his daughter, Adell Faber. Nearly three years after the making of the will and on June 27, 1949, another daughter, Sandra, was born. Sandra was neither provided for nor mentioned in the will and no further will or codicil was executed by the testator. On September 17, 1949, however, the testator executed an instrument by which he made his two daughters equal beneficiaries in certain policies of life insurance, all but one of which he had secured prior to Sandra's birth. One policy, in the amount of $5,000, had been taken out by him on August 1, 1949, and the sole beneficiary of such policy had originally been his after-born daughter, Sandra. The question then is whether the testator has left Sandra, the after-born child, " unprovided for by any settlement " as this clause is used in said section 26 of the Decedent Estate Law or whether, on the other hand, Sandra may demand and receive her intestate share of her father's estate. The Surrogate has held that Sandra, the after-born daughter, has no right to take her intestate share as against the will. With this determination we agree.

We are all in agreement with the view expressed in the dissenting opinion that the " settlement " mentioned in section 26 is not to be considered as only one made by a testator prior to or contemporaneous with the execution of the will. We disagree with the learned opinion of the Surrogate in *Matter of Stern* (189 Misc. 639) and hold that the " settlement " referred to in the section may be a settlement provided by a testator for an after-born child subsequent to the execution of his will. We think also that a provision made by a testator by means of policies of life insurance, payable to the after-born child is within the definition of the settlement required by the section and within the intendment of the Legislature. It is well to point out that the analogy between section 26 and section 35 of the Decedent Estate Law, prior to the 1932 amendment, is far from complete and that authorities construing the latter section may not be controlling as to section 26.

The point of departure between the views of the majority and the views of the minority in the instant case is narrow. We all agree that the courts may determine whether a certain transaction entered into by the testator was, in fact, the " settlement " provided in section 26 or whether some donation was merely a gift or expression of parental affection. However, when, as here, the father of the after-born child has provided for such child by a settlement in the way of life insurance benefits accru-

ing upon the death of the testator and in a substantial amount, we cannot say that it was not his intention to so provide in lieu of making a new will or codicil in which he had merely to mention the child to deprive her of her intestate share. Whether the settlement is " adequate " is for the testator to say, not the court. Section 26 uses the words " any settlement ". Nothing is said about the adequacy of the settlement. The child, Sandra, was not left " unprovided for by any settlement ". (See McLean v. McLean, 207 N. Y. 365; Matter of Froeb, 143 Misc. 660, and Matter of Stone, 200 Misc. 639.)

Were the courts to decide whether a settlement is adequate or not according to their conception of what is just or equitable under a certain set of circumstances would result in the making of a new will for a testator. We agree with the conclusion reached by the Surrogate in this case. The decree should be affirmed.

WHEELER, J. (dissenting). In my opinion the facts as revealed by this record do not justify the decision about to be made, the net result of which is to create an unnatural and unintended discrimination between testator's two infant daughters. I, therefore, dissent.

In July of 1946, Max Faber executed his last will and testament. At that time he had a wife and a small daughter, Adell, for both of whom he provided in his will. Three years later, in June, 1949, a second daughter was born to the testator and his wife, nine months before the testator's death in 1950. Sandra, the second daughter, is neither provided for nor mentioned in the will, which has been admitted to probate.

The executors of the will instituted this proceeding for a determination that Sandra has been provided for as required by section 26 of the Decedent Estate Law and is not entitled to take as against the will of her father. From the decree granting the application of the petitioners, the respondent-appellant, Sandra, by her special guardian, appeals.

" § 26. Child born after making of will. Whenever a testator shall have a child born after the making of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child, so after-born, unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate, and shall be entitled to recover the same portion from

the devisees and legatees, in proportion to and out of the parts devised and bequeathed to them by such will.''

The facts upon which the petitioners' contention is based are the acts of the testator, after the birth of Sandra with regard to insurance policies upon his life. These acts consisted of (1) the decedent's purchase of a life insurance policy in the amount of $5,000 payable solely to Sandra, and (2) his later execution of a change of beneficiaries of several life insurance policies, including the one payable to Sandra, making both daughters joint beneficiaries thereof.

Certainly, the mere purchase of the life insurance policy payable to Sandra as beneficiary, standing alone, is not compliance with the statute. If the testator had not changed the designated beneficiary and had left the policy in effect at his demise, a different question might be presented. Had he changed the beneficiary to make the proceeds of the policy payable to another, Sandra would be left absolutely '' unprovided for '' — the situation contemplated by the statute.

The issue, then, emerges clear and concise. Did the change of beneficiaries on the life insurance policies constitute the '' settlement '' provided for by section 26 of the Decedent Estate Law? If such acts of the testator '' settled '' on the after-born child, then that child has no status to take her intestate share as against the will.

It is urged that by reason of the testator's changes in, and purchase of, life insurance policies, the after-born daughter was not left '' unprovided for by * * * settlement ''. It is, of course, admitted that Sandra was not mentioned in the will. The respondent-appellant denies that the insurance benefits she received from the policies upon her father's life satisfy the provisions of the statute so as to prevent her from taking her intestate share.

The question depends upon the definition or interpretation of the word '' settlement '' as used in section 26. A review of the decisions in which the subject section has been considered convincingly demonstrates that there is no absolute or universal definition of '' settlement '' which may be rigidly applied to all situations of this sort. The elasticity of '' settlement '' as used in section 26 seems only to be limited by a reasonable interpretation of the intendment of the Legislature in enacting the statute. The history of our legislation on the subject, together with its antecedents, has been ably set forth in several well-considered opinions and need not be reiterated here. (*Brush* v. *Wilkins*, 4 Johns. Ch. 506; *Matter of Mosher*, 143 Misc. 149; *Matter of*

*Guilmartin,* 156 Misc. 699; *Matter of Stern,* 189 Misc. 639.) From these and other reported decisions, it is obvious that the question is neither unknown nor unfamiliar to the courts of all times and ages, although it might be noted that there is a dearth of appellate authority among the reports of the courts of this State.

For the last several decades the trend has been toward a rather broad and somewhat loose definition of " settlement," and almost any provision for the child dehors the will is sufficient to constitute a settlement under the statute. (*Matter of Backer,* 148 Misc. 318. See, also, *Matter of Kraston,* 58 N. Y. S. 2d 364; *Matter of Froeb,* 143 Misc. 660, and *Matter of Brant,* 121 Misc. 102.) Surrogate DELEHANTY, in *Matter of Stern* (*supra*) has attempted to put a halt to this modern trend, and in a learned and scholarly opinion sets forth a strict definition of " settlement ". Following the line of thinking evinced by the early English cases, which were concerned with the problems of testamentary disposition in accordance with the Statute of Wills, Surrogate DELEHANTY comes to what he believes to be the only logical conclusion, i.e., that the " settlement " required by the statute in order to prevent the after-born child from receiving his intestate share, must be in writing, and, in view of the basic requirements regarding the execution of testamentary instruments, must have been executed prior to or contemporaneous with the will.

There is no reconciling the view expressed in *Matter of Stern* (*supra*) with the other modern decisions which do not expressly follow that case. Yet, although I believe the courts today are too quick to call almost any post-testamentary provision by a testator a " settlement," I cannot adopt Surrogate DELEHANTY's position. Aside from being highly legalistic, this narrow interpretation renders the statute practically meaningless. No matter what a testator might do for an after-born child by way of providing for him after the testator's death, it would not prevent the revocation of the will as to that child. This would completely destroy the beneficial purpose of the statute, turning what was meant as a shield into a sword.

On the other hand, it appears just as unrealistic to construe even the most minute provision for the after-born child to constitute the settlement contemplated by the statute. Did the Legislature intend that the contents of an after-born child's penny savings bank, having been placed by the testator in a trust account for the child, would constitute such a " settlement " as would reinstate the will and prevent the child, the natural

object of a parent's bounty, from sharing in his estate? (*Matter of Griffin,* 159 Misc. 12.) To ask the question is to answer it. While diametrically opposed to the holding in *Matter of Stern* (*supra*) this definition of the " settlement " sufficient to satisfy the statute is subject to the same criticism. Such a construction effectively and completely throttles a parent in making any provision whatsoever for an after-born child except as he runs the risk that the child will be denied the protection of the statute. This view likewise narrows and restricts the beneficent provisions of the statute so as to render it nearly as meaningless as does the opposite view as expressed in the *Stern* case.

I am convinced the intent of the Legislature in its use of the word " settlement " in the subject statute lies between these two extremes. Further, I believe the section creates an exception to the Statute of Wills, and that there is no inherent contradiction in looking, in the light of all the facts and circumstances of each case, to the intent of the testator in executing the acts alleged to constitute the " settlement ". We are not thereby substituting our concept of a proper testamentary disposition for the intention of the testator, but are merely taking cognizance of the probable intent of the normal parent in our inquiry into the purpose with which the act purporting to suspend the operation of the statute was executed. In other words, the change of beneficiaries of a life insurance policy, under one set of circumstances, might well indicate that the testator intended the provision to be in lieu of a testamentary share, while under another set of facts the change of beneficiaries would not indicate the same intention. See *Matter of Snopek* (249 App. Div. 396, 399, affd. 275 N. Y. 606) where in a case under section 35 of the Decedent Estate Law as it existed prior to the amendment of 1932, it was held that under the circumstances there disclosed "the change of beneficiary was insufficient proof to rebut the presumption of revocation." To arbitrarily assert that every gift of proceeds of an insurance policy is, in every instance, a settlement which precludes the after-born child from participation in the estate of its deceased parent strips the statute of all sense and justice.

I am not unaware of the principle that we are not concerned with equality of distribution and fully realize that it was not the intention of the Legislature to compel testamentary provision by a parent for his children. It does not seem open to doubt that the courts do not have the right to resolve these situations by doing what, in the court's opinion, is equitable and fair. But this does not prevent the size and value of the respec-

tive shares from entering, as one of the pertinent circumstances, into a consideration of what the testator intended by the act which is alleged to constitute the statutory " settlement ". Certainly, one concern toward which the statute is directed is the danger that a parent might forget the possibility of after-born children. (*McLean* v. *McLean*, 207 N. Y. 365.) However, the mere mention of them, as a class or otherwise, in the will not only is indicative that the possibility has been foreseen, but is decisive as to the testamentary intent.

A different situation confronts us where the other phase of the statute — " unprovided for by any settlement " — is present. While any act which purportedly constitutes the settlement obviously would, by its very nature, recognize the child's existence, the intent of the parent in making the provision is not always clear and unambiguous. Whether any specific provision for the after-born child, made during the lifetime of the testator, is intended to be in lieu of a testamentary share can be determined only after consideration of all the circumstances of each situation. (*Matter of Griffin, supra.*) In interpreting the intent of the testator in making any post-testamentary provision, we start with the presumption that the will, which once expressed the complete testamentary conception of the testator, is no longer intact by reason of the mere fact of the existence of the after-born offspring, unless the testator has done something, in a clear and convincing manner, to rebut that presumption.

It is my sincere belief that the result reached below creates a picture considerably out of focus with the realities, especially in view of the facts and circumstances of this particular instance. If all the life insurance policies are paid (the one originally payable to Sandra being contested), each of the testator's daughters will receive, as cobeneficiaries, approximately $17,000. The gross estate is over $130,000. The net estate exceeds $110,000, nearly all of which is to be placed in trust for the testator's wife and first daughter. Generally speaking, under the terms of the will, the wife is to have the income for life, unless she should remarry, and the elder daughter, Adell, receives the principal upon reaching the age of eighteen years. The death of the testator occurred only nine months after the birth of his second daughter, Sandra. And though the testator died without changing his earlier will in which Sandra was not mentioned, he did execute a change of beneficiaries of several life insurance policies, making Sandra and her older sister cobeneficiaries thereof, thus indicating that testator intended to make substantially equal provision for his two daughters in the

way of insurance benefits, rather than a " settlement " for Sandra under section 26 of the Decedent Estate Law.

This indication of the testator's intent is even more clearly apparent when we recognize that one of the policies included in the change of beneficiaries was that originally payable to Sandra alone. Further, it does not appear to be an unreasonable inference that the testator was apprehensive that an insurance policy designating Sandra as the sole beneficiary might be construed to effect her disinheritance. The history of the decedent's purchases of life insurance indicates that he was " insurance-conscious," and that it was a common practice for him to provide for all members of his family by this method. All of these facts, taken together, argue eloquently that Max Faber had not provided for his after-born child by a " settlement," as contemplated by the statute.

I cannot believe otherwise than that the after-born child was the victim of unintentional discrimination and that she should be permitted to share in the estate of her father.

The decree should be reversed, and the matter remitted to the Surrogate's Court with directions to enter a decree not inconsistent with this opinion.

All concur with KIMBALL, J., except WHEELER, J., who dissents and votes for reversal on the law and facts and for the denial of the application of petitioners, in an opinion in which VAUGHAN, J., concurs. Present — TAYLOR, P. J., VAUGHAN, KIMBALL, PIPER and WHEELER, JJ.

Decree insofar as appealed from affirmed, with costs to all parties filing briefs payable out of the estate.