DAVIS, Pers. Rep. of the Estate of Albert H.
Davis et al. *v.* DAVIS et al.

[No. 33, September Term, 1976.]

*Decided November 26, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Benjamin Lipsitz*, with whom were *Reuben Shiling* and *Eleanor J. Lipsitz* on the brief, for appellants.

*George A. Brugger*, with whom were *John J. Sellinger* and *Fossett & Brugger* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

In this case, we are called upon to consider Maryland Code (1957, 1969 Repl. Vol.) Art. 93, § 3-301, which dealt with the rights of a pretermitted child to share in the estate of a testator.[1]

We shall summarize the facts which were stipulated in the trial court. Albert H. Davis died domiciled in Montgomery County, Maryland on 19 January 1973, leaving an estate in excess of $300,000.00. He was survived by his third wife, Barbara G. Davis, formerly Barbara G. Saraga, whom he had married in 1959; by Carolyn J. Wasserman, a daughter of his first marriage; by Judith B. Davis and Stephanie M.

---

1. A virtually identical provision now appears in Maryland Code (1974), Estates and Trusts Article § 3-301.

Parks, two daughters of his second marriage, and by an adopted son, Jeffrey Davis, one of Mrs. Davis' two sons by her first marriage. Jeffrey was two years old when his mother married Mr. Davis, had lived at home with Mr. Davis and his mother thereafter, and was adopted by Mr. Davis on 7 December 1972.[2] From 1968 until his death in 1973, Mr. Davis was undergoing various treatments for cancer, but it is conceded by all that he was mentally alert until the date of this death.

Prior to Jeffrey's adoption, and on 12 May 1970, Mr. Davis had executed the will which was admitted to probate. By the terms of his will, Mr. Davis bequeathed to Barbara G. Davis his personal effects, household goods and one-third of his residuary estate, to be hers absolutely, provided that she survived him for 30 days, which she did.

To Carolyn J. Wasserman, his daughter by his first marriage, he unconditionally left $100.00, explaining that she had otherwise been well provided for.

Judith B. Davis and Stephanie M. Parks, the daughters of the second marriage, were each left one-fourth of the residuary estate; they would have received a thirty per cent share had Mrs. Davis not satisfied the survival requirement.

Finally, Mr. Davis left one-sixth of his residuary estate to be equally divided among such of his three sisters as survived him, which would have been increased to one-fifth if Mrs. Davis had not satisfied the survival requirement.

The only provision made for Jeffrey was contingent upon Mrs. Davis' having predeceased the testator or having failed to survive him for 30 days, in which case Jeffrey was bequeathed fifteen per cent of the residuary estate, to be held in trust for his benefit until he attained age 21. Jeffrey was described in the will as "Jeffrey Saraga, also known as Jeffrey Davis."

When Mrs. Davis and Ronald Willoner, Mr. Davis' personal representatives, announced that they had determined that Code, Art. 93, § 3-301 required them to

---

2. An older son, Steven Saraga, who was seven years of age at the time of the marriage, was never adopted by Mr. Davis.

distribute to Jeffrey as a pretermitted child a sum equivalent to one-fourth of one-half of the residuary estate plus one-fourth the $100.00 bequeathed in the aggregate to the testator's other three children, this action was instituted.

It took the form of a petition for a declaratory decree, filed by Mr. Davis' daughters, Judith B. Davis and Stephanie M. Parks, in the Circuit Court for Montgomery County, sitting as the Orphans' Court.[3]

We are satisfied that an action for declaratory relief cannot be maintained in an orphans' court because although Maryland Constitution art. IV, § 1 identifies an orphans' court as a court of record, Code (1974), Courts and Judicial Proceedings Article § 3-403 (a), which confers upon a court of record, except for the District Court, the power to grant declaratory relief, must be read in the light of § 1-101 (c) of the same Article which provides that the word "Court" as used in the Courts and Judicial Proceedings Article "does not include an orphans' court, or the Maryland Tax Court."

The orphans' court concluded, and the parties seem to have agreed, that what was sought here was a construction of the will, a construction in the narrow sense: a determination of who is to take under a will or in the disposition of the assets of the estate, a question which is clearly within the jurisdiction of an orphans' court, *Shapiro v. Ryan*, 233 Md. 82, 87, 195 A. 2d 596, 598 (1963); *Estate of Childs v. Hoagland*, 181 Md. 550, 551-52, 30 A. 2d 766, 767 (1943); *Longerbeam v. Iser*, 159 Md. 244, 150 A. 793 (1930); *Roane v. Hollingshead*, 76 Md. 369 (1892); *Hokamp v. Hagaman*, 36 Md. 511 (1872); *Blackburn v. Craufurd*, 22 Md. 447 (1864).

We now turn to the applicable statutes. Code, Art. 93, § 3-301 provided:

"No will shall be revoked by the subsequent birth, adoption or legitimation of a child by the

---

**3.** *See* Maryland Constitution art. IV, § 20, which provides that the judges of the Circuit Court for Montgomery County shall sit alternatively and in rotation as an Orphans' Court.

testator except under the circumstances referred to in § 4-105 (c).[4] Such child, or the issue (if any, who survive the testator) of any such child who does not survive the testator, shall, however, be entitled to a share in the estate to be determined and paid in accordance with §§ 3-302 and 3-303 if:

"(a) The will contains a legacy for a child of the testator but makes no provision for a person who becomes a child of the testator subsequent to the execution of the will;

"(b) Such child was born, adopted or legitimated subsequent to the execution of the will;

"(c) Such child, or his issue, survives the testator; and

"(d) The will does not expressly state that such child, or issue, should be omitted.'

Code, Art. 93, § 3-302 provided a mechanism for the determination of the share to be awarded the pretermitted child.

"Any child permitted to share in the estate of a decedent pursuant to § 3-301 shall receive from the personal representative an amount equal to the lesser of (i) the distribution which such child would have taken in the event of intestacy or (ii) the value of all legacies to children of the testator and issue of deceased children divided by the total number of children of the testator who survive him and children leaving issue who take hereunder, including the pretermitted child. The issue of a

---

4. Code (1957, 1969 Repl. Vol.) Art. 93, § 4-105 (c) (now Code (1974), Estates and Trusts Article § 4-105) provided, in part:

"A will, or any part of it, may not be revoked in a manner other than as provided in this section.

"(a) * * *

"(b) * * *

"(c) *Subsequent marriage and issue.* — By the subsequent marriage of the testator followed by the birth, adoption, or legitimation of a child by him, provided such child or his descendant survives the testator; and all wills executed prior to such marriage shall be revoked; or . . . ."

> pretermitted child who did not survive the testator
> shall take such amount by representation."

The nub of the question before us is the applicability of the statutory mandate to the facts of this case.

The trial court concluded, as did the Court of Special Appeals, *Willoner v. Davis,* 30 Md. App. 444, 353 A. 2d 267 (1976), that the contingent provision made for Jeffrey satisfied the requirement of Code, Art. 93, § 3-301 (a) that a person who becomes a child of the testator subsequent to the execution of the will is entitled to share in the estate if no provision is made for him. We granted certiorari in order that we might consider the matter.

We agree with the holding of the Court of Special Appeals that Art. 93, § 3-301 (a) does not require that a person who becomes the child of a testator subsequent to the execution of the testator's will must be provided for *as a child.* It seems to us that the statute is satisfied by any contingent bequest, which, in the language of § 3-301 (a) makes a "provision for a person who becomes a child of the testator subsequent to the execution of the will," if it indicates, as here, that the subsequent adoption was within the contemplation of the testator.

Among the cases reaching a contrary result are *In re Will of Stier,* 74 Misc. 2d 634, 345 N.Y.S.2d 913 (Sur. Ct. 1973) (subsequently adopted child identified only as "my stepdaughter" using her natural father's name); *In re Guilmartin's Estate,* 156 Misc. 699, 282 N.Y.S. 525 (1935), *aff'd,* 250 App. Div. 762, 293 N.Y.S. 665 (1937), *aff'd,* 277 N. Y. 689, 14 N.E.2d 627 (1938) (subsequently adopted child identified as "my friend Helen Nierychlewski, daughter of Teodor Nierychlewski"); *compare In re Quartararo,* 139 So. 2d 277 (La. App. 1962) (will was revoked under Louisiana statute by subsequent adoption of 24-year-old niece who took a contingent interest as "loving niece" under will; held, "child" referred to status as descendant, not minority and no indication that testator comtemplated subsequent adoption) *with In re Carbajal,* 154 La. 1060, 98 So. 666 (1923) (will executed when testator knew of wife's pregnancy is not

540

revoked by subsequent birth of child when will gave life estate to wife, remainder to all children, specifically stating that the unborn child should share equally with the others). But *Stier, Guilmartin* and *Quartararo,* all *supra,* like *In re Reed's Estate,* 19 N.J. Super. 387, 88 A. 2d 690 (1952) (subsequently adopted child identified in will as "the boy whom I have raised"; held, nothing to show that boy is thought of as a son, in any status, present or prospective) and *Fulton Trust Co. v. Trowbridge,* 126 Conn. 369, 11 A. 2d 393 (1940) (subsequently adopted child described as "Peter Trowbridge, who is now a member of my household"), all treated the beneficiary in a fashion which did not intimate that he or she was regarded, even prospectively, as a child of the testator.

We think that this case differs significantly from those just referred to. When Mr. Davis described Jeffrey Saraga as "also known as Jeffrey Davis" and Steven Saraga as "also known as Steven Davis," there was a clear signal that he might adopt one or both of them. There was a manifestation that the testator contemplated that which occurred.

Cases which support the result reached by us here include *In re Kelly's Estate,* 182 Misc. 481, 44 N.Y.S.2d 438 (Sur. Ct. 1943) (subsequently adopted child repeatedly described in will as "my son Richard" and "my son Richard Kelly"); *Bowdlear v. Bowdlear,* 112 Mass. 184 (1873) (will left $5,000.00 to "Fanny Lincoln," who was subsequently adopted; held, she was not entitled to intestate share of father's estate). In *Provident Sav. Bank & Trust Co. v. Nash,* 75 Ohio App. 493, 62 N.E.2d 736 (1945); *McLean v. McLean,* 207 N. Y. 365, 101 N. E. 178 (1913), and *In re Estate of Markowitz,* 126 N.J. Super. 140, 312 A. 2d 901 (1973), children born or adopted after execution of will were treated as children if not described as such. *See also Nicholson v. Sorensen,* 517 P. 2d 766 (Alas. 1973), where the court determined that the children of a deceased son had been intentionally omitted from their grandfather's will.

We think the Court of Special Appeals had it about right

when it observed, in *Willoner v. Davis, supra,* 30 Md. App. 444, 454-56:

> "Other states are divided on the resolution of the question here put to us, and it does not appear that Maryland appellate courts have heretofore come to grips with the issue. Each case in those jurisdictions is, however, determined on its own facts and state statute so that all bear some similarity, on one hand, and, yet, because of the peculiar working of the divers statutes, each case is different from the other. We do not rely upon those divided foreign cases because we believe our statute to be clear and unambiguous. We need not seek guidance from other jurisdictions to interpret our statute inasmuch as Maryland's statute employs certainty of language and relies on a clear purpose. 2A C. Sands, *Sutherland Statutory Construction* § 46.04 (4th ed. 1973)."

Finally, we note that Mr. Davis' will incorporated a carefully structured dispositive plan. It is conceded that he was alert until the time of his death. He recognized that his widow and his daughter, Mrs. Wasserman, either had, or could expect to have substantial resources. He provided for a trusted employee, stipulated that his daughters Judith and Stephanie should receive income producing properties, and the provision which he made for Jeffrey, while contingent on Jeffrey's surviving his mother, was more generous than Jeffrey would have received as a pretermitted child.[5]

> *Judgment of the Court of Special Appeals affirmed; costs to be paid from the estate of Albert H. Davis.*

---

5. The contingent bequest was fifteen per cent of the residuary estate; under § 3-301, Jeffrey would have received twelve and one-half per cent.